## (August 20, 1979)

■ CHARLES A. BALDWIN, Appellant, v SHELL OIL COMPANY et al., Respondents.—In a libel and slander action, plaintiff appeals, as limited by

his brief, (1) from so much of an order of the Supreme Court, Nassau County, dated March 28, 1978, as granted that branch of defendants' cross motion which was to dismiss the first and second causes of action and (2) from so much of a further order of the same court, dated July 31, 1978, as, upon reargument, adhered to the original determination. Appeal from the order dated March 28, 1978 dismissed as academic. The order was superseded by the order granting reargument. Order dated July 31, 1978 reversed insofar as appealed from, and that branch of defendants' cross motion which was to dismiss the first and second causes of action is denied, without prejudice to either plaintiff or defendants moving for summary judgment after plaintiff's deposition proceedings are concluded; such proceedings to be concluded with reasonable speed. Plaintiff is awarded one bill of $50 costs and disbursements. This action was brought by Baldwin, a former employee of the Shell Oil Company, against Shell and McGloin, Baldwin's former supervisor at Shell. The claim of slander which is the subject of this appeal arises out of Baldwin's employment by Shell. The action was commenced by service of a summons in or about October, 1976. The subsequently served complaint contained six causes of action. The first two causes of action (the subject of this appeal) sounded in slander arising out of statements purportedly made by McGloin. The third and fourth causes of action sounded in libel allegedly arising out of a letter sent by Shell to the New York State Department of Labor, Unemployment Insurance Division, and the fifth and sixth causes of action essentially recapitulated the defamation allegations set forth elsewhere in the complaint. The fifth and sixth causes of action were previously dismissed for failure to state a cause of action and are not encompassed within this appeal. Appellant moved for summary judgment on his first through fourth causes of action. Respondents cross-moved for summary judgment. Special Term denied appellant's motion and granted respondents' cross motion for dismissal of the first four causes of action. The first and second causes of action were dismissed on the demonstrated existence of a qualified privilege which attached to the alleged statements and on appellant's failure to sustain his burden of demonstrating that the allegedly defamatory statements were motivated by either actual malice, actual ill will, personal spite or culpable recklessness or negligence. The third and fourth causes of action were dismissed as a result of appellant's failure to produce evidence that respondents published the allegedly libelous statements and on the further grounds that the alleged libel was not written by the respondent McGloin, that the contents of the letter were true and did not constitute a basis for a claim of libel, and that a letter to the Unemployment Insurance Division would have been protected by privilege. Appellant's motion for reargument was granted. Upon reargument Special Term adhered to its original decision. The facts as alleged by appellant are as follows: Appellant was hired by Shell as a salesman-in-training in December, 1968. He was promoted to the position of salesman in March, 1969 and was working in that capacity when respondent McGloin became district manager on January 1, 1971. In January, 1973 appellant was appointed territory manager of the New York district. In that capacity appellant reported directly to the district sales manager, Melvin Evans, who in turn reported to respondent McGloin. Appellant alleges that beginning in early 1975 he had been subjected to subtle and blatant coercion by respondent Shell to perform certain unethical, immoral and unprincipled acts. Appellant states that each year Shell circulates a memorandum to all employees having contact with competitors, regarding Shell's policy of compliance with the antitrust laws. Shell requires and directs that all its

employees sign that memorandum. Appellant alleges that he refused to sign the memorandum on the basis that he was aware of unethical and unprincipled practices performed by Shell. However, on July 11, 1975 on the advice of counsel appellant did sign the memorandum but added the following qualification: "I understand that these are the policies set forth by Head Office and that they expect them to be adhered to in the field." Appellant alleges that he was then requested to sign a similar memorandum without the above qualification but that he refused. (However, the record contains a copy of the memorandum signed without any qualification and dated July 24, 1975. In an attempt to clarify this apparent contradiction, appellant's reply brief states: "Baldwin had no choice in the matter. After Evans and McGloin had examined Baldwin's first letter of July 11, 1975, with the qualification, Evans told Baldwin that the letter was unacceptable with the addition in that form. McGloin sent Evans to speak to Baldwin and somehow rectify the situation. Evans told Baldwin that McGloin was furious and that if he [Baldwin] did not countersign another copy of the same antitrust letter, he would have to face McGloin and the probable consequence of a dismissal from Shell.") Appellant alleges that as a consequence of the foregoing and several other instances wherein he was unwilling to engage in unethical and immoral practices urged by respondent Shell, he was asked to meet with respondent McGloin and Evans on October 17, 1975. Appellant states that at that meeting he was told by respondent McGloin that his work performance was poor and that Shell was not happy with him. He further states that respondent McGloin said that he was not a loyal employee and that he had not functioned in the company's interest in relation to a problem Shall had had with truck deliveries of gasoline. Appellant states that he was astonished, especially when respondent McGloin demanded his resignation. Appellant states that he refused to submit his resignation and that thereupon respondent McGloin said: "I have heard from a majority of your dealers that you have taken money from them, you can sit here and deny it all day, but as far as I am concerned you are a liar and I do not believe a word you say." Appellant states he then asked respondent McGloin for the names of the dealers but was refused. He further states that respondent McGloin told him that if he did not resign he would be terminated upon his refusal to resign. Appellant states that respondent McGloin became incensed and maliciously and wantonly accused him of accepting money from the majority of his dealers and told appellant that he was fired. Appellant then states that he called the employee relations office of Shell and spoke with a Robert L. Dorries. He states that Mr. Dorries told him that respondent McGloin did not have the authority to terminate his services and that he was merely suspended pending investigation. Subsequently respondent Shell was unable to substantiate the charges which had been made. Thereafter appellant was reinstated but transferred to another district. Respondent McGloin's affidavit presents the facts at some variance with appellant's affidavit. McGloin states that in connection with his and Evans' responsibilities to Shell they had to meet periodically with appellant to discuss and evaluate the latter's job performance. One such meeting took place on July 7, 1975 when McGloin discussed with appellant several instances which appeared to McGloin to reflect deterioration in appellant's work performance. Several days after this meeting, according to McGloin, appellant and other employees in comparable positions were asked to sign a letter setting forth Shell's policies with regard to the antitrust laws. Appellant signed the letter, but with the qualification earlier adverted to. However, according to McGloin, two weeks later appel-

lant signed the letter without any qualification. McGloin further states that on October 17, 1975 in response to matters reported to him by Shell employees whose honesty and reliability he had no reason to doubt, McGloin met with appellant. At that meeting, which was also attended by Evans, McGloin questioned appellant about a report which charged him with taking a cash gratuity from a Shell dealer. Appellant responded by stating that he had not accepted any gratuity, but when McGloin repeated the question appellant stated that he might have taken a bottle at Christmas. Respondent McGloin states that the other topics discussed at the meeting were as follows: whether appellant had ever made use of a concealed tape recorder; whether appellant had keys to a cabinet in McGloin's office where confidential records were kept; and whether appellant's decisions concerning gasoline deliveries were correct. McGloin denies making any of the statements imputed to him by appellant. However, respondent McGloin does admit that at the conclusion of the meeting he told the appellant that, given the seriousness of the charges against him, the deterioration of his general work performance and his pattern of erratic behavior appellant would have to resign or be dismissed. He further states that after appellant refused to resign he fired him. McGloin states that later that same day he, not the appellant, spoke with Mr. Dorries who informed him that appellant could not be dismissed summarily, but that he could be suspended without pay pending an investigation. He further stated that upon completion of the investigation the charges could not be substantiated and appellant was reinstated and reassigned. Appellant argues that respondent McGloin's remarks are fraught with malice and ill will, or alternatively, with such wanton and reckless disregard of his rights as is ill will's equivalent and are of such substantial nature as to preclude summary judgment. Respondents' position is that qualified privilege applies and that there has been no showing of malice by evidentiary facts. Clearly the principle of qualified privilege applies. "A communication made *bona fide* upon any subject matter in which the party communicating has an *interest,* or in reference to which he has a *duty,* is privileged if made to a person having a corresponding *interest* or *duty,* although it contained criminating matter which, without the privilege, would be slanderous and actionable" *(Shapiro v Health Ins. Plan of Greater N. Y.,* 7 NY2d 56, 60). Both appellant and respondents agree, in light of the fact that the alleged defamatory statements were made in relation to a subject in which respondents and appellant had a duty, i.e., the operation of Shell, a qualified privilege attached. To defeat the qualified privilege, "it is 'incumbent on the plaintiff to prove that [they were] false and that the defendant was actuated by express malice or actual ill-will. While there are numerous cases in the books in which it is said that as to privileged communications the good faith of the defendant and the existence of actual malice are questions of fact for the jury, the expression must not be misunderstood. Those questions are for the jury only where there is evidence in the case warranting their submission to the jury, and the burden of proof is on the plaintiff' " *(Shapiro v Health Ins. Plan of Greater N. Y., supra,* p 61). Appellant claims that the facts manifest a history of hostility, malice and actual ill will between himself and respondents and requests the opportunity to complete the examinations before trial wherein he could demonstrate such motivation at the time the accusations were made. Under all the circumstances this court believes that appellant should have such opportunity before being deprived of his day in court. The order granting summary judgment is reversed

without prejudice to renewal upon completion of plaintiff's discovery proceedings which are to be concluded with reasonable speed. Mollen, P. J., Hopkins, Titone, O'Connor and Shapiro, JJ., concur.