Myrna GEORGE, Plaintiff,

v.

HILAIRE FARM NURSING HOME, Michael Gottsegen, Administrator, individually and in his representative capacity. Local 1199 National Union of Hospital and Health Care Employees, Doris Turner, President, individually and in her representative capacity, Edward Kaye, union representative, individually and in his representative capacity, Inez Murphy, Union representative individually and in her representative capacity, Mark Brodie, individually and in his representative capacity, Defendants.

No. 84 Civ. 4822 (RLC).

United States District Court,
S.D. New York.

Nov. 12, 1985.

ages awarded by this Court cannot exceed $5,000,000.00.

Paulette M. Owens, New York City, for plaintiff.

Viscardi, Steinman, Basner & Fischler, P.C., Kew Gardens, N.Y., for defendants Hilaire Farm Nursing Home and Michael Gottsegen; Robert H. Fischler, of counsel.

Ohrenstein & Brown, New York City, for Defendants Local 1199, Doris Turner, Edward Kaye, Inez Murphy and Mark Brodie; Christopher B. Hitchcock, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

**Status of the Case**

In this removed action defendants, Hilaire Farm Nursing Home ("Hilaire") and Michael Gottsegen, Administrator (employer defendants) and Local 1199, National Union of Hospital and Health Care Employees ("Local 1199"), Doris Turner, President, Edward Kaye, Inez Murphy and Mark B. Brodie ("union defendants") have moved to dismiss and/or for summary judgment. The return date for the motions was initially July 26, 1985. Counsel for the employer defendants consented to a two week adjournment. (Letter August 20, 1985 from Robert Fishler). There is no indication that any request for an adjournment was addressed to or consented to by the union defendants. There is no record in the court files that the adjournment was so ordered by the court.

In any event, the two weeks came and went without any response being filed by plaintiff and without any request for a further extension. On August 16, 1985, plaintiff's counsel wrote counsel for the employer defendants seeking a "nunc pro tunc" adjournment (*Id.*) and on August 20, 1985, counsel for the union defendants received a similar request. (Letter dated August 20, 1985 from Christopher Hitchcock). Both refused to grant the request. On August 21, 1985, plaintiff's counsel filed a memorandum of law in opposition to the motions but failed to file a 3(g) statement contesting the 3(g) statements of defendants.

Failure to comply with local and Federal Rules of Civil Procedure appears to be standard practice for plaintiff's counsel, at least this has been so in those cases in which she has appeared before me. Dilatoriness in responding to interrogatories on plaintiff's part led to an earlier motion for sanctions. The problem may well be that plaintiff's counsel, as a single practitioner, finds it difficult to keep abreast of her cases on file in this court. While I have some sympathy for counsel, if that is the problem, it is inexcusable for counsel to wait until she is in default before seeking consent for additional time. Since an extension has to be so ordered by the court, plaintiff was in default on these motions as of July 26, 1985. The court, however, is willing to give *ex post facto* assent to the two week adjournment (making opposing papers due on August 9, 1985). However, since counsel did not honor her commitment to file her papers on August 9, and did not seek permission to lengthen her time to file her papers until at least a week after their due date, and in fact did not file her papers until 12 days after their adjourned due date, the court refuses to accept or consider the memorandum filed on August 21.

**The Facts Involved**

Plaintiff is a former employee of Hilaire, which is located in Huntington, New York. She was a nurse's aid at the facility from January 2, 1973, until November 25, 1983. During her employment, she was a member in good standing of Local 1199. Plaintiff was discharged on January 7, 1982. The reason for the discharge was a complaint that plaintiff had touched a patient's breast in lifting her onto her bed. Hilaire notified Local 1199 of its action by mailgram dated January 11, 1982, as required by Article 29 of the collective bargaining agreement. Two weeks thereafter, at Local 1199's request, a grievance meeting was held with Hilaire to discuss the discharge. At that meeting plaintiff was represented by Mark Brodie, a Local 1199 official. As a result of the meeting, Hilaire agreed to reinstate plaintiff with one week's backpay and to pay the plaintiff the second week of back-

pay if an investigation by the New York State Department of Health initiated by Hilaire of the charge which led to plaintiff's discharge exonerated her. Plaintiff agreed to these conditions and returned to work.

Plaintiff gave a statement to an investigator of the New York State Department of Health. She was accompanied by Brodie when she gave the statement.

On April 5, 1983, the State Department of Health wrote Hilaire advising that its investigation had found "insufficient credible evidence that inappropriate physical contact with a patient had occurred as described in the regulations pertaining thereto." On receipt of this communication, Hilaire paid plaintiff the second week of backpay.

On March 20, 1983, plaintiff requested a one month's leave of absence. Hilaire granted the request. By letter dated April 16, 1983, plaintiff asked for an extension of her leave. This request was also granted and Hilaire agreed to keep plaintiff's position open until September 20, 1983.

By letter dated August 25, 1983, an attorney representing plaintiff requested a meeting with Michael Gottsegen prior to plaintiff's return to work. At that meeting, which Edward Kaye attended as a representative of Local 1199, plaintiff agreed to return to work on November 28, 1983. However, in an apparent change of mind, plaintiff tendered her resignation orally on November 25, 1983, which was confirmed in writing by letter dated November 28, 1983.

The written notice concerning the alleged patient abuse incident of January 6 or 7, 1982, was circulated to union officials and representatives and to supervisory personnel of Hilaire, and not to the general public.

Plaintiff concedes that subsequent to her resignation, she has not sought employment as a nurse's aide. Plaintiff has never requested reemployment at Hilaire, nor has she requested any recommendations or references from Hilaire in connection with any employment opportunities.

## Discussion

██ Rule 3(g) of the local rules provides that annexed to the notice of a motion for summary judgment must be "a separate, short and concise statement of material facts as to which the moving party contends there is no genuine issue to be tried." The absence of such a statement is a basis for denying the motion. The material facts set forth in the 3(g) statement of the moving party "will be deemed to be admitted unless controverted" by the opposing party. This rule has been given effective implementation in decisions by our courts. *Woods v. State of New York,* 469 F.Supp. 1127 (S.D.N.Y.) (Weinfeld, J.), *aff'd mem.,* 614 F.2d 1293 (2d Cir.1979). *See also, Davidson v. Keenan,* 740 F.2d 129 (2d Cir. 1984). Thus, we hold, as required by the rules of the court, that all the material facts set out in 3(g) statements, not being controverted, are admitted, at least for purposes of this motion.

Plaintiff in her amended complaint makes the following claims: a breach of the collective bargaining agreement by the employer and breach of the duty of fair representation by Local 1199; intentional infliction of emotional distress; negligence by Hilaire in failing to hire capable supervisory employees who knew they could not terminate an employee without abiding by the terms of the union contract; interference with economic relations in that the termination and representation were such that she will not be hired elsewhere; defamation; and interference with contract relations. This last claim was withdrawn in her amended complaint.

██ A § 301 Labor Management Relations Act (29 U.S.C. § 185) breach of contract/breach of duty of fair representation claim must be brought within six months. *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Welyczko v. United States Air Inc.,* 733 F.2d 239 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). The incident that is the basis for the claim of contract breach by the employer occurred on or about January 7, 1982, when plaintiff was discharged. There is no other date when the employer defendant's breach of contract action could have been based. That stated basis for the 301 claim is the failure to comply with Article 29 of the collective bargaining agreement to notify the union within 48 hours of plaintiff's discharge. Assuming that this claim has merit, it is time barred, since this proceeding is obviously not within the six month limitation period established in *Del Costello.*

There can be no viable claim that the § 301 violation continued beyond January, 1982. Plaintiff was restored to duty within two weeks of January 7, and given a week's backpay. She was granted a leave of absence at her request on March 20, and given the unpaid week's backpay when on April 5, 1983, the State Department of Health exonerated her of any unauthorized procedures. Plaintiff continued in a leave status until her resignation.

██ The breach of duty of fair representation is the alleged failure to follow appropriate grievance procedures and failure to pursue plaintiff's grievance. The record shows that two weeks after the January 11th notice from Hilaire, Local 1199 and plaintiff met with the employer and settled her grievance. During the investigation by the State Department of Health, plaintiff had union assistance. She also had union assistance at the final meeting with her employer in 1983, concerning her return to work from extended leave. The last meeting with the employer was not a grievance meeting. Plaintiff at that point had outside counsel, and a representative of the union was present only to show support. The grievance issue insofar as the union was concerned was resolved in January, 1982, when the employer agreed to restore plaintiff to work and pay her one week of backpay and to pay the second week if the investigation of the charges by the employer showed her not to be at fault. Accordingly the complaint concerning the unfair representation issue is now time barred. *Del Costello.*

■ Moreover, neither the § 301 claim nor the breach of duty of fair representation claim has merit. The employer defendants discharged plaintiff on January 7, 1982, a Thursday. The union was notified on January 11, 1982, a Monday. Article 29 of the collective bargaining agreement explicitly excludes Saturdays, Sundays and holidays in the calculation of time limits. The court may take judicial notice that January 9 and 10, 1982, fell on Saturday and Sunday. *Allen v. Allen*, 518 F.Supp. 1234, 1235, n. 2 (E.D.Pa.1981). Accordingly, the notice to the union conformed to Article 29's requirement of 48 hour limit between discharge and notice to the union. Moreover, the facts before the employer at the time plaintiff was fired, appeared to justify the firing.

■ Local 1199 took up plaintiff's grievance with the employer and secured plaintiff's immediate return to work. Plaintiff agreed to these terms and did not pursue the matter further with the union or notify its officials of any dissatisfaction with their efforts until this litigation. The agreement calls for union notification to the employer within 5–10 days of the union being notified of an act by employer against an employee. The record does not indicate whether that time limit was met. However, if it was not, it is a technical violation and *de minimus* at best. The union took up plaintiff's grievance in good faith in substantial compliance with its obligations as plaintiff's collective bargaining representative.

The rule in this circuit is that a § 301 breach of contract/unfair representation claim prevails only on a showing of a breach of the agreement by the employer and an "arbitrary, discriminatory, or in bad faith" decision, *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), by the union not to pursue the employee's grievance. *Johnson v. Soft Drink Workers Union*, 568 F.Supp. 1203, 1204 (S.D.N.Y.1983) (Pollack, J.). That yardstick is not met here. Accordingly, the contract breach/unfair representation

claim fails on the merits, entitling defendants to summary judgment on those issues.

■ Plaintiff makes a claim of tortious interference with economic relations. By this claim plaintiff asserts defendants' conduct deprived her of other economic activities. See ¶ 16, First Amended Complaint. In her deposition plaintiff asserts that she had not sought any other employment since leaving Hilaire (George Dep. 176–178). Moreover, where the acts complained of may reasonably be classified as unfair labor practices and where the conduct complained of is arguably subject to the protections or prohibitions of the National Labor Relations Act, the claim is preempted by federal law. *See e.g. San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953). Where, however, the conduct concerns matters traditionally considered matters of local concern, and where the conduct is of only peripheral concern to the National Labor Relations Act, the federal preemption doctrine is not applicable. *Garmon*, 359 U.S. at 243–45, 79 S.Ct. at 778–79. The issues raised here (tortious interference with economic activity) do not come within this exception. Indeed, in *Campbell v. McLean Trucking Co.*, 592 F.Supp. 1560 (E.D.N.Y. 1984), the court found the claim of tortious interference with economic activity to touch matters that would ordinarily be handled by the National Labor Relations Board.

■ Plaintiff cannot make out a claim of intentional infliction of emotional distress. Since leaving Hilaire, she has received no medical treatment related to her employment at Hilaire, has no claim for medical expenses, has not seen a psychiatrist, and has no emotional or mental problems (George Dep. 195–200). Proof of this claim requires establishment of "conduct [by the defendant] exceeding all bounds usually tolerated by decent society", *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978), *quoting*

Prosser, Torts, 4th Ed., § 12. Where conduct is not sufficiently egregious to meet this yardstick, the claim must be dismissed. *Dinger v. Anchor Motor Freight Inc.*, 501 F.Supp. 64, 69 (S.D.N.Y.1980) (Carter, J.); *Belanoff v. Grayson*, 98 App.Div.2d 353, 471 N.Y.S.2d 91, 94 (1st Dept.1984).

■ Thus, the § 301 breach of contract/breach of duty of fair representation claim must fail. The grant of summary judgment on this hybrid federal claim makes necessary dismissal of the pendent state negligence claim as well. *McLearn v. Cowan & Co.*, 660 F.2d 845 (2d Cir.1981); *Natowitz v. Mehlman*, 542 F.Supp. 674, 677 (S.D.N.Y.1982) (Duffy, J.); *Slevin v. Pedersen Associates, Inc.*, 540 F.Supp. 437, 441 (S.D.N.Y.1982) (Duffy, J.).

■ The claim of defamation fails for two reasons. The alleged defamation revolves around the January 7th incident of patient abuse. The only persons plaintiff can say were made aware of the incident were Gottsegen, the people who brought the complaint to him, the delegate of Local 1199 and people at the grievance meeting with plaintiff (143). Plaintiff is not aware of anything in writing about the incident, and she does not know of any Hilaire employees being told of the incident aside from those who initially reported the matter to Gottsegen (147). The incident was not made public through any bulletin board announcement or otherwise (142–43). Indeed, the record demonstrates that supervisory personnel of Hilaire, union officials and New York State Department of Health officials investigating the incident were the only ones who were made aware of it. In making a statement about the incident, sending the mailgram to the union and writing to the New York State Department of Health, Gottsegen was fulfilling his responsibilities to Hilaire and complying with the collective bargaining agreement. As such, these matters are protected by a qualified privilege. *Baldwin v. Shell Oil Co.*, 71 A.D.2d 907, 419 N.Y.S.2d 752 (2d Dept. 1979).

■ Secondly, the material was distributed in January, 1982, and this action commenced in November, 1983. The action, which is required to "be commenced within one year" NYCPLR § 215(3), is, therefore, untimely.

In view of the bases for holding that summary judgment must be awarded in favor of the employer and union defendants, defendants' other arguments need not be addressed.

IT IS SO ORDERED.