Karen DUNCAN, Plaintiff,

v.

AT & T COMMUNICATIONS, INC., Communication Workers of America, Local 1150, Chester L. Macey, individually and in his representative capacity, James Pratt, individually and in his representative capacity, Diane Dearborn, individually and in her representative capacity, Al Florio, Juanita Lewis, Mr. Colligan, Jerome Blaustein, M.D., Jack Kapland, M.D., and Dr. Carroll, M.D., Defendants.

No. 86 Civ. 4796 (RLC).

United States District Court,
S.D. New York.

Aug. 19, 1987.

Paulette M. Owens, New York City, for plaintiff.

Seyfarth, Shaw, Fairweather & Geraldson, New York City, for defendants AT & T Communications, Inc., et al.; Kathleen M. McKenna, of counsel.

Colleran, O'Hara & Mills, P.C., Mineola, N.Y., for defendants James Pratt, Chester L. Macey and Communication Workers of America, Local 1150; Vincent F. O'Hara, of counsel.

Martin, Clearwater & Bell, New York City, for defendant Jack Kapland, M.D.; Patricia A. Lynn, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Karen Duncan is a former employee of defendant AT & T Communications, Inc. ("AT & T"). Defendants, in addition to AT & T, include several individuals holding supervisory positions at AT & T, several physicians who apparently rendered opinions concerning Duncan's medical condition, and the Communication Workers of America, Local 1150 ("Local 1150" or "the Union") and two of its former or current presidents (collectively "the Union defendants"). In substance, Duncan alleges discrimination based on race and disability in connection with the "conditions and privileges of her employment," Complaint at 2, breach of the duty of fair representation by the Union defendants, and intentional infliction of emotional distress.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6),

F.R.Civ.P.[1] In addition, with the exception of the Union defendants, they all move for summary judgment pursuant to Rule 56, F.R.Civ.P. However, none has filed "a separate, short and concise statement of the material facts as to which the [party moving for summary judgment] contends there is no genuine issue to be tried." Civil Rule 3(g), Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The motions for summary judgment are therefore denied. *Id.* ("Failure to submit such a statement constitutes grounds for denial of the motion."); *George v. Hilaire Farm Nursing Home,* 622 F.Supp. 1349, 1353 (S.D.N.Y. 1985) (Carter, J.). Matters outside of the pleadings are excluded, and the court will consider only the sufficiency of the complaint under Rule 12(b)(6), F.R.Civ.P.

## DISCUSSION

In general, a complaint may be dismissed only if its claims are unquestionably insufficient to entitle the plaintiff to relief no matter what supporting facts might be proved at trial. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). Thus, all well-pleaded factual allegations are assumed true and are viewed in the light most favorable to the plaintiff. *Papasan v. Allain,* — U.S. —, —, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986). In short, the burden on the moving party is heavy because the sanction of dismissal is harsh.

Conversely, however, allegations which are not "well-pleaded" should not, and often simply cannot, be accepted as true. Inadequately pleaded factual allegations take at least two forms. First, a complaint may be so poorly composed as to be functionally illegible. This is not to say that a complaint need resemble a winning entry in an essay contest. "[A] short and plain statement of the claim," rather than clarity and precision for their own sake, is the benchmark of proper pleading. Rule 8(a), F.R.Civ.P.; *see Goldman v. Belden, supra,* 754 F.2d at 1065. However, the court's responsibilities do not include cryptography, especially when the plaintiff is represented by counsel. *See Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972).

Second, individual allegations, although grammatically intact, may be so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains. Such allegations are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *McClure v. Esparza,* 556 F.Supp. 569, 571 (E.D.Mo.1983), *aff'd without opinion,* 732 F.2d 162 (8th Cir.1984), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 477 (1985).

Duncan's complaint, which was drafted by her counsel, is deficient in both respects. Grammatical and stylistic shortcomings aside, the complaint fails to state facts sufficient to apprise defendants or the court of plaintiff's claim. Moreover, certain factual allegations, which are grammatically unobjectionable and which would be legally significant if they were well-pleaded, are unacceptably groundless and conclusory. Although the complaint no doubt could be dismissed for these reasons

---

1. On November 7, 1986, plaintiff served the Union defendants, as well as defendant Dr. Jack Kapland, with notices of voluntary dismissal. As to Kapland, the notice of dismissal was void from the start because it was served both after he had filed a motion for summary judgment and without his stipulation or the court's consent. *See* Rule 41(a), F.R.Civ.P. On the other hand, the Union defendants, who had not moved for summary judgment, sought by letter dated November 10, 1986, to withdraw their Rule 12(b)(6) motion in view of the representation that plaintiff had dismissed the action as against them. A copy of the notice of voluntary dismissal was attached, and plaintiff did not subsequently challenge or otherwise reply to the letter. Believing that plaintiff had duly filed the notice of dismissal, the court on December 8, 1986, granted the Union defendants' request to withdraw their Rule 12(b)(6) motion on the ground that it was moot.

In fact, plaintiff never actually filed any notice of voluntary dismissal. The court's order of December 8, 1986, is therefore vacated. The request of the Union defendants by letter dated June 23, 1987, for reinstatement *nunc pro tunc* of their Rule 12(b)(6) motion to dismiss, is granted.

alone, *see Heart Disease Research Foundation, supra,* 463 F.2d at 100; *Barr, supra,* 810 F.2d at 363, a review of its substantive deficiencies may prove useful to obviate subsequent, futile amendments.

Duncan alleges race- and disability-based discrimination by AT & T, in violation of 42 U.S.C. § 1981, and breach of the duty of fair representation by the Union, presumably in violation of 29 U.S.C. § 185.[2] In support of the § 1981 claim, she alleges that AT & T failed to offer her employment or employee benefits after she suffered an on-the-job injury; that it failed to provide her with complete information about employment opportunities and benefits; and that it failed to apply equitably its promulgated policies, specifically, those regarding employee disability benefits. Complaint ¶¶ 4–5, 8–10, 12, 14, 17, 42–44, 46–47. Similarly, in support of the claimed breach of the duty of fair representation, Duncan alleges that the Union failed to answer her inquiries concerning her inability to regain employment at AT & T; that it failed to counsel her adequately about employee benefits she might be due; that it failed to investigate why AT & T allegedly had not borne the cost of a medical test for Duncan; and that it failed to adhere to established guidelines, policies, and procedures. *Id.* ¶¶ 6–9, 17, 43–44, 46.[3]

To state a claim for a § 1981 violation, the complaint must allege (i) that Duncan is a member of a racial minority group; (ii) that she applied and was qualified for reemployment in a position for which AT & T was seeking applicants; (iii) that despite her qualifications she was not offered the position; and (iv) that AT & T thereafter kept the position open and continued to seek applicants with Duncan's qualifications. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[4]

Construing the complaint as liberally as possible, it alleges at best only the third of these four elements. Duncan's race is nowhere mentioned. The repeated references to a partial disability or handicap are of no help to her, since § 1981 prohibits only discrimination that is based at least in part on racial classifications. *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976). The complaint fails to allege that Duncan applied or was qualified for reemployment in any particular position. Nor does it allege that AT & T ever made any position available, much less sought applicants for such a position. Rather, plaintiff complains in effect that defendants did not take adequate affirmative steps to assist her in finding a new job position. These sorts of allegations, without any suggestion that plaintiff was treated differently from members of another race, fail to state a claim under § 1981. *See Hudson v. International Business Machines Corp.,* 620 F.2d 351, 354 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); *see also United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (inquiry in Title VII case is whether employer is treating some people less favorably than others because of race).[5]

As for the duty of fair representation, a union or its representatives breach their duty when, acting in an arbitrary or discriminatory manner, they fail to serve

---

**2.** Plaintiff does not specify what law is the basis for her claim of breach of the duty of fair representation.

**3.** The complaint also alleges "[t]hat each defendant conspired with the other named defendants to limit the terms and conditions of plaintiff's employment." Complaint ¶ 49. This and like allegations of a conspiracy, *see id.* ¶¶ 13, 17, 45, 48, are so general and conclusory that they must be disregarded. *See Ellentuck v. Klein,* 570 F.2d 414, 426–27 (2d Cir.1978); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam).

**4.** The elements of a prima facie § 1981 violation are properly borrowed from disparate treatment cases under Title VII, 42 U.S.C. § 2000e *et seq. Daniels v. Board of Education,* 805 F.2d 203, 207 (6th Cir.1987); *Martin v. Citibank, N.A.,* 762 F.2d 212, 216–17 (2d Cir.1985).

**5.** Whether the § 1981 claim was timely filed under the applicable statute of limitations is a more complicated question which, in light of the dismissal of the claim on other grounds, need not be addressed.

the interests of union members in the enforcement of a collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564–65, 96 S.Ct. 1048, 1056–57, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). The issue of fair representation does not even arise, however, unless a union member (i) has a grievance, based on a breach by the employer of the collective bargaining contract, and (ii) has at least attempted to use grievance procedures provided by the contract. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *see DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983).[6]

 These rules require dismissal of Duncan's fair representation claim on a number of grounds. The complaint does not state whether Duncan is a member of Local 1150. Thus, on its face it establishes no basis for holding the Union defendants to a duty of fair representation. Whether or not she is a member, however, the complaint also fails to allege either a violation by AT & T of any provision of a collective bargaining agreement or an attempt by Duncan to air a grievance. Instead, aside from conclusory statements—e.g., that the Union did not adhere to established guidelines, policies, and procedures—the complaint dwells on the Union's alleged refusal to assist her in matters independent of any colorable case of wrongdoing by AT & T. In short, the complaint fails to set forth circumstances which would trigger the Union's duty of fair representation.[7]

 Independent of these grounds for dismissal, the fair representation claim is untimely. A claim under 29 U.S.C. § 185 must be brought within six months from the time the plaintiff knew or should have known that a breach had occurred. *Demchik v. General Motors Corp.*, 821 F.2d 102, 105 (2d Cir.1987). It is difficult, of course, to say when Duncan's time for bringing her claim could have expired, since the complaint fails to establish that such a breach ever occurred. However, even assuming that certain allegations were sufficient to establish a breach of duty, only one alleged event falls within the six-month limitations period:

 6. ... [D]efendant union has failed to respond to numerous correspondence [sic] provided by the plaintiff and has refused to offer any explanation as to the reason that plaintiff could not resume with defendant company.

 7. Said refusal on the part of defendant union has taken place within the last 6 months prior to the filing of this complaint.

Complaint ¶¶ 6–7.

This transparent attempt to save the fair representation claim from untimeliness is futile. Whether viewed as an isolated event or the tail-end of a series of related events, a simple failure to respond to correspondence, without any indication that plaintiff had a grievance and sought representation from the Union, is insufficient to establish that the Union or its representatives could have breached a duty during the limitations period. *See DelCostello, supra*, 462 U.S. at 163–65, 103 S.Ct. at 2289–91; *King v. New York Telephone Co.*, 785 F.2d 31, 33–34 (2d Cir.1986) (limitations period begins to run when "the plaintiff could first have successfully maintained a suit based on that cause of action," i.e., "no

---

6. A union member need not *exhaust* grievance procedures when, for example, the union refuses to press the grievance or does so in a perfunctory way. However, the individual must at a minimum allow the union the opportunity to undertake his or her representation. *Hines, supra*, 424 U.S. at 563, 96 S.Ct. at 1055; *Maddox, supra*, 379 U.S. at 652–53, 85 S.Ct. at 616.

7. The caption of the complaint names the two former or current presidents of Local 1150 in their individual and representative capacities.

However, nowhere else in the complaint is this distinction made and, in particular, nowhere are either of the presidents said to have acted individually. The action against the presidents in their individual capacities is dismissed as frivolous. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–49, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962); *Peterson v. Kennedy*, 771 F.2d 1244, 1256–57 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

later than the time when plaintiff[ ] knew or reasonably should have known that … a breach [of duty] had occurred").

Duncan's remaining claim of intentional infliction of emotional distress rests on state law. Because her federal claims must be dismissed at this pre-trial stage, the pendent state claim is dismissed as well. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *George v. Hilaire Farm Nursing Home*, 622 F.Supp. 1349, 1355 (S.D.N.Y.1985) (Carter, J.).[8]

The complaint fails to state a claim on which relief can be granted. Defendants' motions to dismiss the complaint in full accordingly are granted. Rule 12(b)(6), F.R.Civ.P.

IT IS SO ORDERED.

---

**8.** Even if the court properly could exercise pendent jurisdiction, the state claim appears to be untimely. The statute of limitations applicable to claims of intentional infliction of emotional distress requires that actions be commenced within one year. CPLR § 215(3); *Goldner v. Sullivan, Gough, Skipworth, Summers & Smith*, 105 A.D.2d 1149, 482 N.Y.S.2d 606, 608 (4th Dep't 1984). No allegation that is even potentially relevant falls within this period.