**Gregory E. SOHNS, Plaintiff,**

v.

**LITTLE PRINCE PRODUCTIONS, LTD., A. Joseph Tandet and Gary E. Jackson, Defendants.**

**No. 91 Civ. 5762 (RPP).**

United States District Court,
S.D. New York.

May 18, 1992.

---

Colamarino & Nagashima, New York City by Leonard J. Colamarino, for plaintiff.

Edwin M. Levy, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Gregory E. Sohns ("Sohns") moves (1) pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against Defendant Little Prince Productions, Ltd. ("Little Prince") on Claim II of the complaint, seeking compensatory damages for services rendered in the amount of $81,702.92, and (2) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing with prejudice the counterclaim against Sohns by Defendants Little Prince and A. Joseph Tandet ("Tandet").

The complaint contains claims against Little Prince for breach of contract, account stated, and quantum meruit and unjust enrichment. Tandet is sued for tortious interference with contract, and Defendant Gary E. Jackson ("Jackson") is sued for breach of contract. Little Prince and Tandet each assert a counterclaim against Sohns for malpractice. Little Prince asserts a cross-claim against Jackson for judgment over and against Jackson for any

liability found against Little Prince and/or Tandet.

On this motion Sohns seeks recovery on his claim of account stated and dismissal of Tandet's and Little Prince's counterclaim for malpractice.

## BACKGROUND

Sohns rendered legal services to Little Prince and sent it bills each month from August 1990 through May 1991 and a final bill on July 31, 1991. These bills totaled $105,702.92. During 1990 Little Prince made two payments of $2,000 each, in September and December 1990, against outstanding statements. In February and March 1991, Little Prince made two additional payments totaling $15,000. Additionally, Jackson made a payment in June 1991 of $5,000. Sohns claims that a balance of $81,702.92 remains outstanding.

Since 1980, Little Prince has been a public company traded on the National Association of Securities Dealers Automatic Quotation System ("NASDAQ"), and Tandet has been a senior executive officer and director. In June 1990, Little Prince was in merger discussions with Abcor Products, Inc. ("Abcor"). At that time, Tandet, as President of Little Prince, requested Sohns to represent Little Prince in connection with various matters involving corporate and securities law, including preparation of a share exchange agreement. Tandet agreed to pay Sohns for his legal services at an hourly rate of $175 and to reimburse him for disbursements incurred on behalf of Little Prince. Tandet states that Sohns agreed to a "cap" of $10,000 to $15,000 on the bill for his services, including the share exchange agreement with Abcor. Sohns denies that the estimate of his fees to which Tandet refers was agreed to be a "cap" on Sohns's fees. Tandet states that the merger discussions with Abcor ceased at the end of October 1990.

Sohns's bills through October totaled less than the alleged cap. However, Tandet called on Sohns for additional services to Little Prince that did not relate to a merger with Abcor.

In November 1990 Tandet was approached by Marshall Manley and Charles Kolker regarding a possible merger with Reserve Energy and Capital Corporation ("RECC"), a company allegedly owning oil reserves in Kentucky. These negotiations were more successful, and a share exchange agreement (the "Share Exchange Agreement") with the Control Group of RECC (the "Control Group") was executed in the last week of December 1990. By that date Little Prince had made two payments to Sohns totaling $4,000. At the closing of the Share Exchange Agreement, Tandet delivered to the attorneys for the Control Group the agreed-upon shares of Little Prince in exchange for an agreed amount of RECC stock. The Control Group, as a condition for the execution of the Share Exchange Agreement, agreed to pay $15,000 toward the legal fees incurred by Little Prince on this transaction. Pursuant to that agreement, Tandet received a check for $15,000 in February 1991.

Sohns's total bill outstanding on January 7, 1991 for services rendered to Little Prince through December 31, 1990 was $23,385.50. Tandet alleges that he telephoned Sohns at that time and complained that Sohns's bills were over the $15,000 cap Sohns allegedly had promised. According to Tandet, Sohns then told Tandet not to be concerned because two principals of RECC, B.F. Shamburger and Jackson, would pay the amounts due. In February, Tandet sent a Little Prince check to Sohns dated February 13, 1991 in the amount of $3,000 with the notation "Legal Services—Merger." Sohns demanded a larger payment, and Tandet sent him a Little Prince check dated February 15, 1991 in the amount of $12,000 marked "Full payment legal fees as of December 31, 1990." Tandet alleges that when making this payment he told Sohns that his fees were excessive. On February 20, 1991, Sohns returned the check for $12,000 to Tandet, rejecting Tandet's notation that the $12,000 would constitute payment in full.

On March 4, 1991, Sohns sent a facsimile letter to M. Douglas Wood, Jr. ("Wood") of Sherwood, Arkansas, who had replaced Tandet as President of Little Prince at or

around that time. In that letter, a copy of which was sent to Tandet, Sohns requested that Little Prince's Board of Directors direct Tandet to pay to Sohns immediately the full amount of his fees and disbursements as of December 31, 1990. Sohns also indicated that he was currently performing additional services involving Little Prince's SEC filings and matters necessary for the forthcoming merger of Little Prince and RECC.

Tandet responded the same day by a facsimile letter to Wood, stating he felt that $19,000 was the appropriate fee for Sohns's services through December 31, 1990, and that Sohns had agreed that he would adjust his initial bill of $8,000 and had not done so. Tandet referred to the alleged $10,000 to $15,000 cap on legal fees. Tandet's letter also stated that Sohns had estimated his fees to Little Prince for the first half of 1991 at $100,-000, which Tandet found "totally unreasonable." Sohns responded by facsimile letter to Wood that same day disputing various of Tandet's points and· stating he had not agreed to any adjustment or to a cap on his fees. Thereafter, Tandet delivered to Sohns a Little Prince check for $12,000 dated February 15, 1991, which bore no notation. Sohns continued to send monthly bills for his services and outstanding balances without reduction except for payments received.

In April 1991, Sohns notified Little Prince that he would cease his services to Little Prince unless a payment of $20,000 was made against the then outstanding balance under the statements Sohns had rendered to that date.

On May 3, 1991 a special meeting of the Board of Little Prince was held by conference telephone call at Tandet's request. At this meeting, Tandet stated that in his opinion the corporation was in danger of losing its NASDAQ listing due to lack of liquidity and several other factors. He also alleged that the Control Group had failed to disclose pending investigations of activities of principals of the Control Group prior to the execution of the Share Exchange Agreement in December 1990. Tandet moved the

Board to consent to a proposed recision of the Share Exchange Agreement with RECC by the principal shareholders of Little Prince in the form of a "reversal by consent." This motion was defeated by a 3–2 vote.

Wood then announced that Sohns had agreed to complete the legal work necessary to file Forms 10–K and 10–Q, provided he received an interim payment of $20,000 from Little Prince on his outstanding bill of approximately $38,000. Wood pointed out that the only liquid funds from which to pay this outstanding obligation immediately was from the general funds of Little Prince. On the ground that all the bills rendered by Sohns were for the benefit of and on behalf of Little Prince, Wood moved "that the Board authorize the immediate payment for those· legal services and to direct Joseph Tandet, having control of the general funds of Little Prince ... to immediately pay the sum of $20,000.00 to Greg Sohns as payment of legal fees to get the Forms 10Q and 10K completed on a timely basis." Complaint, Exh. B ·at 2–3.

Wood's motion was passed 3–2. Tandet voted against the motion and stated he would reserve his decision as to whether or not he would consent to pay the funds as directed by the Board. Wood advised Tandet that his objections would be noted in the Board minutes and would be distributed to any inquiring shareholder if trading in the company's stock trading was suspended for failure to file the 10–K and 10–Q forms on a timely basis as a result of the non-payment of attorneys fees.

When Tandet did not transmit payment of $20,000 to Sohns, Sohns threatened to resign from his representation of Little Prince. To prevent this, Jackson, a controlling shareholder of Little Prince, promised personally to pay Sohns's statements· in weekly installments of $5,000 if Sohns would continue to represent Little Prince. Jackson sent Sohns an initial payment of $5,000 in May 1991 but thereafter made no further payments to Sohns. Sohns continued to provide legal services to Little Prince.

Tandet's reasons for refusing to pay Sohns the $20,000 are stated in his June 11, 1991 letter to Sohns on Tandet's letterhead as an attorney. In that letter, Tandet stated that it was his "consistent position all along ... that the funds in control of Little Prince Productions, Ltd. on December 30, 1990, would continue under [Tandet's] supervision and control [after the merger], and would not be used to pay any bills or fees of the 'Control Group' of Little Prince." Sohns Reply Aff., Exh. B. Tandet stated that the Control Group had represented that they would pay ongoing legal fees from January 1, 1991 and supply liquidity to Little Prince.

Sohns's response on June 12, 1991 was that Tandet had received $15,000 from the Control Group earmarked for the payment of Sohns's legal fees and had withheld them for six weeks while trying to coerce unfair concessions from Sohns. Sohns also stated that he had not been paid for work done in 1990, long before the agreement with RECC. In all months other than June 1991, Sohns sent monthly bills for services to Little Prince containing the claim for the outstanding balance in full.

The accountants for Little Prince were unable to prepare the financial statements necessary for the filing of the annual 10–K report for the fiscal year ended December 31, 1990, or for the filing of the quarterly 10–Q Report for the quarter ended March 31, 1991. As a result the company was late in its SEC filings and faced the danger of losing its NASDAQ listing. During this time, Wood had been replaced by Lloyd Walsh of Fort Worth, Texas as President of Little Prince, and Tandet was Executive Vice President. Tandet alleges that Little Prince was in turmoil. It was for these reasons, according to Little Prince and Tandet, that Sohns's bills were only objected to orally after March 4, 1991. The turmoil was resolved in July 1991 when the parties to the Share Exchange Agreement decided to rescind that agreement, and Tandet again became President of Little Prince.

Defendants attach an affidavit of Harriet Harkavy ("Harkavy"), an attorney who recommended Sohns to Little Prince, alleging that in about March 1991 she became aware of an ongoing dispute between Tandet and Sohns as to the quality of Sohns's work and the amount of his bills. Harkavy stated that she met with Tandet and Sohns in June 1991 in an unsuccessful attempt to mediate their dispute.

## DISCUSSION

### Motion for Summary Judgment:

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the nonmoving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

When a bill is made up and rendered, the recipient is bound to examine it. If the recipient does not expressly admit that the account is correct, but fails to object to the accounts within a reasonable time, they will become stated accounts and binding on both parties unless fraud, mistake, or other equitable considerations are shown. *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 719 (S.D.N.Y.1986); *Rosenman Colin Freund Lewis & Cohen v. Neuman*, 93 A.D.2d 745, 461 N.Y.S.2d 297, 298–99 (1983). Acquiescence may be inferred from partial payment of a bill without protest as to the remainder. *Id.* at 720; *Chisholm–Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (1979).

Sohns's motion for summary judgment on Claim II is for the entire balance of $81,702.92, as reflected in the last bill he rendered. At the time Sohns rendered the bill, he was aware that the balance was disputed by Tandet, as shown by the Harkavy affidavit and correspondence between

Sohns and Tandet in June. Plaintiff's counsel does not claim that objections to an account must be in writing, and Tandet claims that throughout the period he repeatedly made oral objections to the amounts of Plaintiff's bills. Accordingly, genuine issues of material fact exist, and Plaintiff's motion is denied.

*Motion for Judgment on the Pleadings:*

 An action for damages for legal malpractice requires proof of three elements: (a) a duty; (b) a breach of the duty; and (c) proof that actual damages were proximately caused by the breach of the duty. A prima facie case of legal malpractice requires a showing that the attorney failed to exercise that degree of skill commonly exercised by an ordinary member of the legal community, and that the client incurred damages as a direct result of the attorney's actions. *Marshall v. Nacht,* 172 A.D.2d 727, 569 N.Y.S.2d 113, 114 (1991).

Little Prince's and Tandet's counterclaims against Sohns are based on allegations by Tandet that Sohns was requested to and did not conduct a due diligence investigation of the Control Group, its participants, and their past business dealings prior to closing the Share Exchange Agreement entered into on December 31, 1991; that prior to closing Tandet learned of SEC charges filed against a corporation owned by two members of the Control Group, which information Sohns did not investigate stating that "there was no time"; and that Sohns erroneously told Tandet that the Share Exchange Agreement with the Control Group had to be consummated on December 31, 1991 due the signing of a preliminary agreement on December 21, 1990.

Little Prince and Tandet claim such actions constituted malpractice which harmed Little Prince because, but for Sohns's negligence and erroneous advice, Little Prince would not have concluded the Share Exchange Agreement with the Control Group and would not have foregone other merger opportunities. They also charge that during the first half of 1991 Sohns negligently failed to make the required filings with the SEC on behalf of Little Prince and thereby endangered Little Prince's NASDAQ listing.

Defendants Little Prince and Tandet allege, although not with the desired precision, that as a consequence of Sohns's alleged negligence and erroneous advice Little Prince incurred substantial legal expenses in connection with the recision of the Share Exchange Agreement and that "the actions of Sohns further caused Little Prince and Tandet to lose other merger opportunities." Answer, Counterclaim and Cross–Claim ¶ 57. Tandet and Little Prince claim that the recision of the Share Exchange Agreement was necessary "so that Little Prince could file its 10–K and 10–Q forms on its own" and thus maintain its NASDAQ listing. Answer, Counterclaim and Cross–Claim ¶ 46.

Because Little Prince and Tandet allege that Sohns breached his duty to Little Prince in the various manners alleged and that Little Prince incurred resultant damages, such allegations constitute a cause of action for Little Prince, which is alleged to have had a lawyer-client relationship with Sohns. The allegations are insufficient, however, as to Tandet, with whom no such relationship is alleged to have existed. *Compusort, Inc. v. Goldberg,* 606 F.Supp. 456, 457 (S.D.N.Y.1985). Accordingly, Sohns's motion for judgment on the pleadings dismissing the malpractice counterclaims is granted with respect to Tandet's counterclaim and denied with respect to Little Prince's counterclaim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Plaintiff's motion for judgment on the pleadings dismissing the counterclaim is granted as to Tandet and denied as to Little Prince. Counsel are to attend a pretrial conference on May 29, 1992, at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.