Andre WATERMAN, Plaintiff,

v.

TRANSPORT WORKERS' UNION LO-CAL 100, Malcolm Goldstein and O'Don-nell Schwartz Glanstein & Rosen, Defendants.

No. 97 Civ. 8830(SAS).

United States District Court,
S.D. New York.

June 17, 1998.

Regina Felton, Felton & Associates, Brooklyn, New York, for plaintiff.

Eli S. Cohen, Diane K. Kanca, Mari Ann Connolly Sennett, McDonough Marcus Cohn Tretter Heller & Kanca, L.L.P., New York City, for defendants Malcolm Goldstein and O'Donnell Schwartz Glanstein & Rosen.

Malcolm Goldstein, O'Donnell Schwartz Glanstein & Rosen, New York City, for defendant Transport Workers' Union Local 100.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff filed an action in New York state court on October 27, 1997, asserting claims for breach of fair representation by defendant Transport Workers' Union Local 100 and legal malpractice by defendants Malcolm Goldstein and O'Donnell Schwartz Glanstein & Rosen. Defendants removed the action to federal court on November 26, 1997. On February 23, 1998 defendants moved for summary judgment. For the reasons stated below, defendants' motion is granted.

## I. Legal Standard for Summary Judgment

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). In response to the identification of such evidence, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-movant on a material issue of fact, summary judgment is improper. *See Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 33 (2d Cir.1997).

In determining whether summary judgment should be granted, the court resolves all ambiguities and draws all reasonable inferences against the moving party. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. However, the moving party is not required to affirmatively disprove unsupported assertions made by the non-movant. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## II. Factual Background

The following facts are undisputed. Plaintiff Andre Waterman began working as a bus driver for the City of New York in 1982. *See* Affidavit of Andre Waterman, dated April 8, 1998, ("Waterman Aff."), at ¶ 2. Defendant Transport Workers' Union Local 100 ("the Union") is a labor union that represents various wage and hour employees of the Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA"), plaintiff's former employer. *See* Defendants' Statement of Material Facts on Motion for Summary Judgment Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stat.") at ¶ 3. The Union and MABSTOA are parties to a collective bargaining agreement ("CBA") covering various hourly employees of MABSTOA. *See id.* at ¶ 5. This agreement provides that discipline may be grieved by the Union before an impartial arbitrator employed jointly by the Union and MABSTOA. *See id.* In addition, pursuant to the agreement, decisions of the arbitrator are final and binding. *See id.;* Affidavit of Malcolm A. Goldstein, dated February 17, 1998, ("Goldstein Aff."), Exh. E.

Defendant Malcolm Goldstein ("Goldstein") is a partner in the law offices of O'Donnell Schwartz Glanstein & Rosen ("the firm"), the firm that is general counsel to the Union. *See* Goldstein Aff. at ¶ 1.

On or about September 29, 1995, Waterman tested positive for cocaine following a random drug test. *See* Def.'s 56.1 Stat. at ¶ 6; Waterman Aff. at ¶ 2; Goldstein Aff. at ¶ 5. Thereafter, MABSTOA referred him to its Employee Assistance Program ("EAP"). *See* Def.'s 56.1 stat. at ¶ 7. Following clearance from MABSTOA's medical department, plaintiff returned to work on or about January 22, 1996 and continued his drug treatment. *See id.* at ¶ 8; Goldstein Aff., Exh. I.

On or about April 1, 1996, plaintiff allegedly tested positive again for cocaine in a test administered by Gracie Square Hospital as part of his drug treatment program. *See* Def's 56.1 Stat. at ¶¶ 7, 9; Waterman Aff. at ¶ 3. Plaintiff denies use of any controlled substances and claims that flawed testing procedures are to blame for the results. *See* Waterman Aff. at ¶ 4.

According to Goldstein, MABSTOA terminated Waterman's employment on or about May 9, 1996, retroactive to April 26, 1996. *See* Goldstein Aff. at ¶ 18. However, Waterman claims that he never received notice of this discharge and that he still possesses his identification pass and shield—items which are collected by MABSTOA upon discharge or termination. *See* Waterman Aff. at ¶ 12. Despite this disagreement of fact, the parties agree that the union promptly filed a grievance on behalf of Waterman and that Goldstein was assigned to represent him at the arbitration. *See* Def.'s 56.1 Stat. at ¶¶ 12, 15; Waterman Aff. at ¶ 6; Goldstein Aff. at ¶¶ 19, 21.

On or about July 12, 1996, a neutral arbitrator, Thomas Hartnett, employed jointly by the Union and MABSTOA, heard Waterman's grievance. *See* Goldstein Aff. at ¶ 20; Waterman Aff. at ¶ 7. Hartnett issued a written decision denying plaintiff's grievance on or about September 4, 1996. *See* Goldstein Aff. at ¶ 24; Waterman Aff. at ¶ 10. Waterman claims that he learned of this decision through his attorney in this suit, Regina Felton, on or about October 22, 1997. *See*

Waterman Aff. at ¶ 10. He also contends that he has never been served with a copy of that decision. *See id.* at ¶ 11.

On December 23, 1996 plaintiff filed a petition to compel arbitration pursuant to CPLR § 7511 against the Union and MABSTOA in Kings County Supreme Court ("1996 Action"). *See* Goldstein Aff. at ¶ 27. He claimed that his request for an arbitration following his discharge had been refused and that the April 1, 1996 drug test had not been properly verified. *See id.* The court dismissed Waterman's action in its entirety in an order dated June 14, 1997. *See* Goldstein Aff. at ¶ 28; Waterman Aff. at ¶ 13. The court found that plaintiff's petition was more accurately characterized as a petition to set aside the previous arbitration award rather than a motion to compel arbitration. *See Waterman v. MABSTOA, The New York City Transit Authority, and the Transport Workers' Union Local 100*, Index No. 48687/96 (Sup.Ct. Kings Co., July 14, 1997) ("*Waterman I* "). Viewed in this light, the court reasoned that the action was barred by the 90 day statute of limitations for such relief; that the action was barred by res judicata because plaintiff had already had his arbitration; and, that plaintiff did not have standing to bring an action pursuant to CPLR § 7511 because he was not a party to the arbitration agreement between MABSTOA and the Union. *See id.;* Waterman Aff., Exh. 2.

Following this dismissal, Waterman commenced the instant action in New York County Supreme Court, alleging claims for both breach of the duty of fair representation against the union and legal malpractice against the firm and Goldstein. *See* Verified Complaint in Goldstein Aff., Exh. A. As noted above, defendants removed plaintiff's action to this court.

**III. Discussion**

The defendants press three arguments in support of their motion for summary judgment: 1) that the claim against the union for breach of fair representation is barred by res judicata, 2) that this claim is also barred by the statute of limitations, and 3) that the

claim against the firm and Goldstein for malpractice is barred because these defendants are immune from suit. *See* Defendants' Memorandum of Law in Support of the Motion for Summary Judgment ("Def.'s Mem.") at 2, 8, 15. For the following reasons, defendants' motion is granted and both claims are dismissed.

### A. *Breach of Fair Representation Claim Against the Union*

Plaintiff's claim against the union for breach of fair representation is dismissed on the grounds of res judicata and, in the alternative, for violating the statute of limitations.

#### 1. *Res Judicata*

Res judicata is a doctrine that was designed to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). A federal court must accord state court judgments the same preclusive effect as would other courts in that state. *See Migra v. Warren City School District Board of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *Hennessy v. Cement and Concrete Worker's Union Local 18A, of the Laborer's Int'l Union of North Am., AFL—CIO,* 963 F.Supp. 334, 337–38 (S.D.N.Y.1997). New York law, therefore, must be applied to determine whether the New York state court's decision in *Waterman I* precludes the current action.

Under New York law, the transactional approach to the doctrine of res judicata dictates that "parties are precluded from raising in a subsequent action any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *Schulz v. Williams,* 44 F.3d 48, 53 (2d Cir.1994); *See Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 265 (2d Cir.1997); *Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). Furthermore, the transactional test bars subsequent claims arising out of the same factual grouping as earlier litigated claims, even if the later claim seeks different relief or is based on a different legal theory. *See Jacobson,* 111 F.3d at 265.

Plaintiff's 1996 Action and the current action arise out of the same series of events or underlying facts. In the earlier action, plaintiff sued MABSTOA and the Union following employment termination after testing positive for cocaine. Though the petition itself was rather unclear (*See* Petition in Goldstein Aff., Exh. L.), the court, in *Waterman I,* recharacterized Waterman's request to compel arbitration as a motion to set aside or vacate the award and characterized Waterman's grievance against the union as a breach of fair representation claim. *See id.*

In the current action, plaintiff is suing the union for breach of the duty of fair representation as well as the union's firm and the individual attorney who represented him at arbitration for malpractice. Both of these claims relate to and arise out of the same series of events as the prior suit: the failure of the drug test, subsequent arbitration and eventual termination.[1]

Plaintiff argues that res judicata does not bar his current action because (1) the previous action was improperly dismissed, (2) he was unable to raise the issues of failure to represent and malpractice in the state court proceeding and (3) he now seeks monetary damages. *See* Memorandum of Law in Opposition to Defendants' Motion ("Pl.'s Mem.") at 5–13.

With respect to the first argument, plaintiff claims that because he was never served with a copy of the arbitration award, the ninety day statute of limitations under CPLR § 7511(a) never commenced. As a result, Judge Vinik's decision to dismiss on the grounds that the action was time-barred was erroneous. *See* Pl.'s Mem. at 7. It is unnecessary to explore the merits of this

---

1. Whether or not the malpractice claim against the firm and Goldstein is barred by res judicata is a complicated issue as these defendants were not parties to plaintiff's first action. As applied to this claim, res judicata involves notions of privity that simply need not be addressed because the malpractice claim is dismissed on a different ground. *See* pp. 369–372, *infra.*

argument because the res judicata consequences of a final, unappealed judgment on the merits are not "altered by the fact that the judgment may have been wrong ..." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The policy underlying the res judicata doctrine is so strong that it even bars subsequent claims arising out of the same transaction as the prior claim when the original court reached an erroneous conclusion. *See id.* The appropriate course of action is to seek a direct review of the judgment rather than to bring a collateral attack. *See id.* Thus even if Judge Vinik's dismissal was incorrect, the current action is still barred on res judicata grounds.

Plaintiff next argues that he could not have brought the current claims in Action 1 because the grounds on which an Article 75 action can be brought are specifically proscribed and do not include actions for failure to represent or for malpractice. *See* Pl.'s Mem. at 9. In *Waterman I,* the court stated that in the petition, Waterman alleged that the propriety of the drug test "was not properly raised by his union representative in a prior arbitration." Plaintiff did, in fact, claim a breach of fair representation by the union in Action 1.

With respect to plaintiff's third argument, defendants correctly point out that regardless of what type of relief is sought, res judicata bars subsequent claims arising out of the same transaction as an earlier claim. *See Jacobson,* 111 F.3d at 265; *Burgos,* 14 F.3d at 790. Hence, the fact that plaintiff seeks monetary damages in this suit but did not seek such relief in the first action does not affect the application of res judicata. In sum, plaintiff's cause of action against the union is barred on res judicata grounds.

### 2. Statute of Limitations

■ In the alternative, plaintiff's claim against the Union is barred by the statute of limitations. Where a federal statute does not proscribe a specific limitations period, federal courts must look to federal law to determine the appropriate limitations period. *See Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 701, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Phelan v. Local 305,* 973 F.2d 1050, 1058 (2d Cir.1992). Usually this entails adopting the analogous state statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 158–59, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). However, in some circumstances state limitations periods do not complement federal laws and thus should not be borrowed. *See id.* at 161, 103 S.Ct. 2281 (in labor case, applicable limitations period is borrowed from another federal law rather than the analogous state law).

In *DelCostello,* the Supreme Court addressed the appropriate statute of limitations to apply in a hybrid section 301/ fair representation suit. *See id.* at 158, 159, 103 S.Ct. 2281. In this type of suit, a union member sues both an employer, for breach of a CBA, and a union for breach of its duty of fair representation. *See id.* The court concluded that these types of claims had no analogy in state law and ultimately chose to adopt the six month limitations period found in LMRA § 10(b). *See id.* at 152, 103 S.Ct. 2281.

■ Though *DelCostello* involved a hybrid suit, courts in this circuit have uniformly read this decision to require that the § 10(b) six-month limitations period also be applied to unfair representation claims alone. *See Phelan,* 973 F.2d at 1060; *Gvozdenovic v. United Air Lines,* 933 F.2d 1100, 1106 (2d Cir.1991); *Eatz v. DME Unit of Local Union No. 2,* 794 F.2d 29, 33 (2d Cir.1986); *Ruffolo v. Bevona,* No. 96 Civ. 3223, 1997 WL 88290, at *2 (S.D.N.Y. Mar.3, 1997). Thus, the six-month statute of limitations applies to plaintiff's claim for breach of fair representation.

■ The next question, then, is when did Waterman's cause of action against the union accrue. This type of claim accrues no later than the time when plaintiff knew or reasonably should have known that a breach of the duty of fair representation had occurred. *See Eatz,* 794 F.2d at 32 (citing *Santos v. District Council,* 619 F.2d 963, 969 (2d Cir. 1980)); *Goldsmith v. Communications Workers of Am., Local 1105,* No. 96 Civ. 9298, 1997 WL 252036, at *2 (S.D.N.Y. May 14, 1997) (citing *Flanigan v. Int'l Bhd. Of Teamsters,* 942 F.2d 824, 827 (2d Cir.1991)).

■ Plaintiff argues that the statute of limitations never began to run because he

was never served with a copy of the arbitration decision. *See* Pl.'s Mem. at 7. However, it is evident from the record that at least one defendant, Goldstein, knew about the arbitration determination, dated September 4, 1996. *See* Goldstein Aff. at ¶¶ 24–26. His affidavit suggests that he must have known about the determination before October 22, 1996, the date on which he sent documents pertaining to Waterman's termination, including a copy of the arbitration award, to Waterman's counsel, Regina Felton. *See id.* Even in the unlikely event that Waterman did not learn of the determination until this date, the statute of limitations governing plaintiff's action against the union would have expired six months later, on April 22, 1997. Furthermore, though plaintiff claims he did not learn of the award until October 22 of *1997* rather than 1996, (*see* Pl.'s Aff. at ¶ 10), he should have known about the decision from his attorney, who learned of it in 1996. It appears that plaintiff made an error in his affidavit and meant to say that he had received notice on October 22 1996. Plaintiff knew or should have known of the arbitration decision no later than October 22, 1996, hence the current claim against the union for breach of the duty of fair representation, brought on October 27, 1997, is time barred.

## B. *Malpractice Claim Against the O'Donnell Firm and Goldstein*

Plaintiff's claim for malpractice against both the O'Donnell firm and Goldstein is dismissed because both of these defendants are immune from suit by a union member. Before discussing the merits of the malpractice claim, I will first address the jurisdictional basis for the malpractice claim, even though it was not raised by any party.

### 1. *Jurisdiction*

 The claim against the union for breach of the duty of fair representation arises under federal labor law and is hence a federal question claim within the meaning of 28 U.S.C. § 1331. 28 U.S.C. § 1367(a) allows a district court to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Because the malpractice claim and the breach of fair representation claim are integrally related and arise out of the same underlying facts, the district court has supplemental jurisdiction over the malpractice claim under 28 U.S.C. § 1367(a).[2]

### 2. *The Merits*

Defendants argue that this claim should be dismissed because the law firm and Goldstein alike are immune from suit by Waterman. Plaintiff, on the other hand, argues that the primary case on which defendants rely has no applicability in the Second Circuit and

---

**2.** 28 U.S.C. § 1367(c)(3) provides the district court with discretion to dismiss a claim supported only by supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. However, dismissal of the supplemental state claim is not required in these circumstances. *See Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). Rather, the court retains the power to hear this claim if a weighing of the underlying policies suggests that it should be heard. *See id.*

Though there is no mandatory dismissal of supplemental claims, once all claims over which the court had original jurisdiction have been dismissed, the underlying values of judicial economy, convenience, fairness and comity will usually point towards dismissal of the supplemental claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). However, circumstances may arise that compel the retention of jurisdiction.

One reason to retain jurisdiction is if the outcome of the claim is plain. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993). In this situation, "considerations of judicial economy [warrant] retention and decision rather than relinquishment of the case to the state court." *Id.*

Here, the underlying federal claim has been dismissed. Because the outcome of the supplemental malpractice claim is clear, it makes sense to decide this claim rather than to remand it to state court. The fact that the malpractice claim turns on federal law is another reason to retain jurisdiction. *See Spielmann v. Anchor Motor Freight Inc.*, 551 F.Supp. 817, 825 (S.D.N.Y. 1982) (because the state law question turned on a federal pre-emption issue, the court retained jurisdiction despite having granted summary judgment dismissing plaintiff's federal claims).

that the rule on which defendants rely should not be extended to union attorneys.

In *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 246–48, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court held that agents and members of a union could not be held individually liable for violations of a contract for which the union itself would be liable. In 1981, the Supreme Court reiterated and extended its holding in *Atkinson* in *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 407–408, 415, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981). The Court held that § 301 of the LMRA prohibits suit against individual union members and reflects Congressional intent to shield these individuals from liability. *See id.* at 407, 101 S.Ct. 1836. The Court also held that even if a union member's conduct was not authorized by the union, that individual could not be sued for damages. *See id.*

Since these two holdings, courts have uniformly endorsed the principle that individual union members and agents are immune from suit. *United Steelworkers of Am. v. Lorain,* 616 F.2d 919, 924 (6th Cir.1980) (union officials cannot be held individually liable for damages arising from alleged breach of collective bargaining agreement); *Universal Communications Corp. v. Burns,* 449 F.2d 691, 693–694 (5th Cir.1971) (section 301 forbids recovery of damages from individual union members even if the claim purports to be based on state law); *Bonilla v. Bevona,* No. 91 Civ. 3008, 1993 WL 497961, at *2, *3 (S.D.N.Y. Dec.1993) (president of a union cannot be held responsible in his individual capacity for acts of the union); *Gates v. Local Union No. 14 of the Int'l Union of Operating Engineers, AFL—CIO,* No. 85 CV 3760, 1988 WL 1953, at *5 (E.D.N.Y. Dec.29, 1987) (business manager and former president of the union have no individual liability for damages); *Duncan v. AT & T Communications, Inc.,* 668 F.Supp. 232, 236 n. 7 (S.D.N.Y.1987) (action against union presidents in their individual capacities is dismissed as frivolous); *Spielmann,* 551 F.Supp. at 820 n. 2 (individual employees cannot be sued in a breach of contract action under LMRA § 301); *Suwanchai v. Int'l Bhd. of Electrical Workers, Local 1973,* 528 F.Supp. 851, 861, 862 (D.N.H.1981) (cause of action against individual union officials is dismissed for failure to state a claim upon which relief could be granted).

This doctrine has since been expanded to include law firms and individual attorneys who act as agents of a union in various contexts set forth in the CBA. *See Arnold v. Air Midwest, Inc.,* 100 F.3d 857, 861–862 (10th Cir.1996); *Breda v. Scott,* 1 F.3d 908, 909 (9th Cir.1993); *Montplaisir v. Leighton,* 875 F.2d 1, 5–6 (1st Cir.1989); *Peterson v. Kennedy,* 771 F.2d 1244, 1257–1260 (9th Cir. 1985).

The Ninth Circuit engaged in a comprehensive discussion about why the immunity accorded individual officials of a union should also apply to law firms and attorneys acting on behalf of a union. *See Peterson,* 771 F.2d at 1258. There, a professional football player sued his union for breach of fair representation and two of the union's attorneys for malpractice in providing him with inaccurate advice upon which he relied to his detriment in pursuing a grievance against his ex-ball-club. In deciding to dismiss the cause of action for malpractice against the individual attorneys, the court noted that "the rationale behind the *Atkinson* rule is squarely applicable" where union attorneys are "hired and paid by the union to act for it" in various situations arising out of the CBA between the union and the employer, such as labor grievances and arbitrations, where these attorneys act as agents or representatives of the union. *Id.* at 1258. The court further reasoned that an attorney acting on behalf of a union who represents a union member in a labor dispute does not enter into "an attorney-client relationship in the ordinary sense with the particular union member who is asserting the underlying grievance. Although the attorney may well have certain ethical obligations to the grievant, his principal client is the union..." *Id.* Consequently, the attorney should not be subject to liability to any individual union member for acts performed on behalf of the union as part of the CBA between the union and the employer. *Id.* at 1259; *See also Arnold,* 100 F.3d at 861; *Montplaisir,* 875 F.2d at 6. Finally, though the attorneys in the *Peterson* case were part of house counsel for the union, the Ninth

Circuit subsequently extended the immunity concept to outside counsel. *See Breda,* 1 F.3d at 909.

The *Peterson* court discussed another policy in support of its decision to protect union attorneys from malpractice liability for conduct undertaken in contexts proscribed by the CBA. Though the notion of negligence is at the core of a malpractice action (*see e.g. Sohns v. Little Prince Productions, Ltd.,* 791 F.Supp. 88 (S.D.N.Y.1992)), negligence is insufficient to support a breach of the duty of fair representation suit against a union. To support the latter claim, a union's conduct must be arbitrary, discriminatory, or in bad faith. *See Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Peterson,* 771 F.2d at 1259. "Holding that union attorneys are subject to malpractice suits by individual grievants for actions undertaken as the union's representative would give rise to an anomalous result: certain agents or employees of the union would be held to a far higher standard of care than the union itself." *Peterson,* 771 F.2d at 1259. This is simply unfair.

Also, since the statute of limitations is far longer for malpractice actions than for breach of fair representation actions, aggrieved members would be able to sue attorneys long after the expiration of the statutory period for suits against the union and, "the union attorney would often be the only defendant against whom a disappointed grievant could proceed." *Id.* Attorneys would become targets for strike suits in what would normally be breach of fair representation claims. *See id.; Montplaisir,* 875 F.2d at 6. The cost of legal services to unions would rise and the overall quality of union representation would be threatened. This result is clearly undesirable. An extension of immunity to attorneys removes this type of threat to the collective bargaining process between the union and the employer.

 In this case, the Union retained the O'Donnell firm to represent its members in various labor disputes and specifically appointed Goldstein to represent plaintiff in the arbitration proceeding on July 12, 1996. The agency principles adopted by the courts apply directly to this case and bar plaintiff's malpractice claim against the firm and Goldstein.

Plaintiff's response to the immunity claim is unclear. First, he appears to argue that though this may be the law in the Ninth Circuit, it has not yet been adopted in this Circuit. *See* Pl.'s Mem. at 17. This argument is unavailing. First, several circuits have agreed with the approach taken in the Ninth Circuit. More importantly, that approach is well reasoned. Accordingly, I find that the immunity doctrine applies to the malpractice claims presented here.

Plaintiff also suggests that the law firm and Goldstein should not be immune from suit because this immunity would effectively remove all ethical obligations that a lawyer ordinarily has to a client. *See* Pl.'s Mem. at 15. This argument must also be rejected. First, union members may sue attorneys employed by a union where the legal services provided are unrelated to the collective bargaining agreement, such as "drafting a will, handling a divorce or litigating a personal injury suit" (*Peterson,* 771 F.2d at 1259) because agency principles do not apply to such services. Furthermore, if an attorney's conduct in arbitration proceedings and other situations arising out of the CBA is arbitrary, discriminatory or in bad faith, "the union member may sue the union for breach of the duty of fair representation ... [and a union has a] right to sue its attorney for malpractice or for breach of contract, and to compensate a union member out of the recovery for any damages he may have suffered." *Id.* Therefore, a union member has an adequate remedy for alleged malpractice by the union's attorney.

## IV. Conclusion

Defendants have demonstrated that there is no genuine issue as to any material fact in this case. Plaintiff's claim against the Union is barred both on res judicata and statute of limitations grounds. The claim against the law firm and Goldstein is barred because these defendants are immune from suit. Defendants' motion for summary judgment is

therefore granted. The clerk is directed to close this case.