**FEDERATION OF TURKISH–AMERI- CAN SOCIETIES, INC., on Behalf of itself, its members and others similarly situated, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPA- NIES, and Columbia Pictures Industries, Inc., Defendants.**

**No. 84 Civ. 5771–CSH.**

United States District Court, S.D. New York.

Oct. 10, 1985.

Melih Dogan, New York City, for plaintiff.

---

Pryor, Cashman, Sherman & Flynn, New York City, for defendants; Stephen F. Huff, Tom J. Ferber, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

At the heart of this litigation lies a motion picture, "Midnight Express." "Midnight Express" is a motion picture dramatization of the experiences of a real-life American student, Billy Hayes. Hayes was prosecuted by Turkish authorities for attempting to smuggle hashish out of Turkey. The film was produced by defendant Columbia Pictures Industries, Inc. It was first exhibited in movie theaters in the United States in the fall of 1978. Subsequently, defendant American Broadcasting Companies purchased the television broadcast rights to the film from Columbia. ABC exhibited the film on its television network on September 21, 1980; August 14, 1983; and July 22, 1984.

It is perhaps an understatement to say that "Midnight Express" portrays certain Turkish law enforcement and governmental authorities in an unflattering light.

This action was commenced by plaintiff Federation of Turkish-American Societies, Inc. on its own behalf and on behalf of a purported class which, according to ¶ 9 of the complaint, consists of:

"... approximately 300,000 Turkish-Americans residing in the United States whom [sic] have been discriminated against in the showing of the film 'Midnight Express' and will continue to suffer recurrent discrimination at the hands of the defendants unless this Court grants the relief requested herein."

The relief requested, in addition to certification as a class action, includes an injunction against further distribution or showing of the film in the United States, and the award of compensatory and punitive damages.

Plaintiff Federation of Turkish-American Societies, Inc. is alleged to be a not-for-profit New York corporation, serving as an umbrella organization for twenty-three not-for-profit corporations concerned, in one way or another, with Turkish-American individuals, organizations, and affairs.

The complaint contains three counts. The first count invokes the federal civil rights laws, specifically, 42 U.S.C. § 1985(3). The second count invokes the New York Civil Rights law, § 40–c. The third count alleges a common-law claim for "mental and emotional distress and financial injuries to Turkish-Americans in all walks of American society...." Complaint, ¶ 27.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6), F.R. Civ.P., for failure to state a claim upon which relief can be granted. Because the motion is accompanied by affidavits and other materials falling outside the pleadings, the Court treats the motion as one for summary judgment pursuant to Rule 56.

Plaintiff opposes the motion, and cross-moves for leave to amend the complaint and conduct certain discovery.

For the reasons which follow, defendants' motion for summary judgment is granted. Plaintiff's cross-motion is denied. The complaint will be dismissed.

## I.

■ Motion pictures constitute a form of speech protected by the First Amendment to the United States Constitution. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *United States v. A Motion Picture Film Entitled "I am Curious-Yellow,"* 404 F.2d 196 (2d Cir.1968); *Natco Theaters, Inc. v. Ratner,* 463 F.Supp. 1124, 1128 (S.D.N.Y.1979); *Man v. Warner Bros. Inc.,* 317 F.Supp. 50, 52 (S.D.N.Y.1970).

■ In the circumstances of the case at bar, the First Amendment protection afforded to "Midnight Express" is absolute, and forecloses any conceivable theory of liability available to the plaintiff or to the

class for which the plaintiff attempts to speak.

That is because the motion picture, either in its conception and original exhibition by defendant Columbia Pictures, or in its subsequent exhibition by defendant ABC, is uncomplicated by the presence of any of the limited factors which would abrogate the constitutional protection afforded to the free dissemination of ideas.

That reflection brings me immediately to the one case upon which plaintiff relies in resisting defendants' appeal to a First Amendment protection. That case, *Vietnamese Fishermen's Association v. The Knights of the Ku Klux Klan*, 518 F.Supp. 993 (S.D.Tex.1981), final judgment reported at 543 F.Supp. 198 (S.D.Tex.1982), is characterized by plaintiff in its opposing brief at 4 as authority which "breaks through" any barrier erected by the First Amendment "and protects the plaintiff's rights to be free from ethnic discrimination."

The facts and rationale of the *Vietnamese Fishermen's* case are entirely inapposite. A group of Gulf fishermen, disturbed by the competition generated by Vietnamese refugees fishing in Gulf waters, embarked upon a conspiracy of physical intimidation of the Vietnamese. The strategems relies upon included boat burning; cross burnings; threats of violence against Vietnamese fishermen, their families and friends; and "boat rides" with guns and small cannons, prominently displayed and, according to the district judge's findings, intended to frighten Vietnamese fishermen in the Gulf, and to interfere with their fishing operations. The district court, not surprisingly, enjoined such activities. At one point, the defendants sought First Amendment protection for their conduct. The district court, rejecting that contention, held that public shows of force did not constitute "speech" within the meaning of the First Amendment; and that, even if such military operations could be so characterized, "defendants still would not be able to avail themselves of 'First Amendment protection,' in view of the long-recognized proposition that 'fighting words,' which 'by their very utterance inflict injury or tend to

excite an immediate breach of the peace,' fall outside the ambit of the First Amendment." *Vietnamese Fishermen's Association, supra,* at 543 F.Supp. 208, citing and quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942).

In the case at bar, neither the conception nor the subsequent exhibition of the film "Midnight Express" was or is accompanied by such immediate incitements to violence as infected the conduct of the defendants in the *Vietnamese Fishermen's Association* litigation. Under the cases cited *supra,* the protection afforded to defendants by the First Amendment is absolute.

■ That is so, even though plaintiff and the class which it purports to represent may understandably find certain aspects of the film personally offensive. The First Amendment protects the offensive utterance fully as much as it protects the bland or uncontroversial. In a free society, it cannot be otherwise. *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1897, 23 L.Ed.2d 430 (1969); *Collin v. Smith,* 578 F.2d 1197 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978).

## II.

While plaintiff alleges other theories of recovery, I need not reach them because, for the reasons stated, the First Amendment absolutely protects defendants from liability. It is for this reason that I deny plaintiff's cross-motion to amend its complaint, and for additional discovery. The contentions put forward in support of the cross-motion do not suggest that the protection afforded by the First Amendment could be breached, even if the amendment (or the additional discovery) were permitted.

## III.

It is impossible for the Court not to sympathize with the sensibilities of the Turkish-American citizens, whose emotions underlie this action. The United States is justifiably proud of its Turkish-American citizens, whose presence and contributions

to our national fabric bear witness, as in the case of so many other of our citizens who have left the old world for a new one, to the vitality of the American dream. Turkish-Americans are proud of their heritage, and understandably resent utterances which may be regarded as disparaging. But they must recall that one of the freedoms which, by their exodus they have obtained for themselves and their children, is that very freedom of speech which, in the circumstances of this case, entitles the defendants to summary judgment dismissing this complaint.

## CONCLUSION

The Clerk of the Court is directed to enter summary judgment in favor of defendants and against plaintiff, dismissing the complaint with prejudice.

I decline to certify a class.

In the exercise of my discretion, the dismissal of the complaint will be without costs. The parties will bear their own attorneys' fees.

It is SO ORDERED.