**FRIENDS OF FALUN GONG, et al., Plaintiffs,**

v.

**PACIFIC CULTURAL ENTERPRISE, INC., et al., Defendants.**

**No. 02 CV 4482 CBA.**

United States District Court, E.D. New York.

Sept. 24, 2003.

Sam P. Israel, New York City, for Plaintiffs.

Floyd Abrams, Dean Ringel, Cahill, Gordon & Reindel, New York City, for Pacific Culture Enterprise, Inc.

David A. Schulz, Jeffrey H. Drichta, Robyn B. Aronson, Clifford Chance US LLP, New York City, for Sing Tao Newspapers New York Ltd. and David Mui.

## MEMORANDUM & ORDER

AMON, District Judge.

Plaintiffs, Friends of Falun Gong, a nonprofit organization dedicated towards the practice of Falun Dafa, and 67 of its individual members (collectively "plaintiffs" or "Falun Gong") bring this action against Pacific Culture Enterprise, Inc., doing business as *The China Press* ("CP"), and three of its writers and against Sing Tao Newspapers New York Ltd., doing business as *Sing Tao Daily* ("STD"), and two of its writers/editors [1] (collectively "defendants") alleging a conspiracy to interfere with civil rights and to deprive individuals of legally protected rights or privileges in violation of 42 U.S.C. § 1985(3), as well as defamation, defamation per se, and prima facie tort in violation of New York common law, and a violation of New York Civil Rights Law § 40-c. Defendants moved to dismiss plaintiffs' complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motion to dismiss is granted.

## BACKGROUND

According to the Amended Complaint in this action, Falun Gong is an association of individuals aimed at cultivating physical and spiritual values premised upon principles of truthfulness, compassion, and forbearance, collectively known as "Falun Dafa." (Am.Compl.¶ 11.) The plaintiffs in this action are all part of a sub-group of Falun Gong practitioners in the New York metropolitan area. (*Id.* ¶ 15.) The Amended Complaint alleges that both CP and STD are media outlets owned and/or controlled, either directly or indirectly, by the People's Republic of China ("PRC"). (*Id.* ¶ 26.) Plaintiffs contend that PRC has used both CP and STD to persecute practitioners of Falun Dafa in the United States, and in New York in particular. (*Id.* ¶ 20.)

Plaintiffs allege that on or about July 20, 2001, the American Citizen's Anti–Evil–Cult Association ("ACAECA"), a New York based organization whose purpose is to spread propaganda about Falun Dafa practitioners, was formed with the defendants' full support. (*Id.* ¶¶ 28–29.) It is plaintiffs' contention that the defendants aided ACAECA's efforts to carry out this purpose by publishing a series of articles about plaintiffs. These articles form the basis for plaintiffs' state law claims.

---

1. The named writers for *The China Press* are Lu Zidai, Li Daye, and Shan Huaihai and the named editors of *Sing Tao Daily* are David Mui and Yang Huifen.

## I. *Procedural History*

On April 30, 2002, plaintiffs sought immediate injunctive relief in New York State Supreme Court in an effort to prohibit defendants from publishing further libelous or defamatory articles about the plaintiffs. On June 6, 2002, Justice Duane A. Hart heard plaintiffs' request for injunctive relief and denied such a request, finding "not one iota of evidence" that would justify an injunction against publication. Although Justice Hart denied plaintiffs' relief, he granted plaintiffs the opportunity to submit further evidence to support their position. As a result, plaintiffs obtained new counsel and amended their complaint to include, for the first time, a federal cause of action, which precipitated defendants' removal of this action from state court on August 13, 2002.

## II. *Allegedly Defamatory Statements*

Plaintiffs allege that defendant CP made the following statements:

### A. *The 2001 Articles*

- "The American government suppresses the public-endangering Davidian Cult and the People's Heavenly Palace Cult but supports Falun, which cruelly hurts Chinese people." (Am. Compl.¶ 45.)
- "The Falun Gong evil cult is flagrantly detrimental, endangers society, deceives the world to gain fame, and has done many evils." (*Id.* ¶ 30.)
- "[ACAECA] had been formed and... was preparing to adopt specific means to prevent the evil cult from harming resident Chinese families and individuals." (*Id.*)
- "The U.S. should adhere to the international standard of behavior and establish an anti-evil-cult law to ban the intolerance and torture caused by evil religious faith." (*Id.* ¶ 31.)

- "The Chinese government's fight with 'Falun Gong' is a battle between righteousness and evil, between science and ignorance. It is what a responsible government, or any responsible government, must do." (*Id.* ¶ 32.)
- "[E]vil cult 'Falun Gong' killed someone for the sake of 'eliminating demons'." (*Id.* ¶ 35.)
- Local Falun Gong practitioners took pleasure in the WTC attacks (*Id.* ¶ 41.)
- Falun Gong practitioners suffer from a "psychological disorder," and readers are encouraged to join the New York Chinese United Federation for a meeting to "denounce Falun Gong" (*Id.* ¶ 51.)
- "After our newspaper and other New York Chinese media reported the news of how a Fujian descent youth, because of practicing Falun Gong, became psychologically disturbed, a few Falun Gong practitioner have begun to harass the people involved." (*Id.* ¶ 53.)
- "Even so, many people still don't understand why Falun Gong induces psychotic syndromes, nor the difference between the psychotic syndromes induced by Falun Gong and other psychopathic diseases.... The psychotic syndromes can be categorized into different types: schizophrenic, being easily irascible and depressed, hysteria-like psychotic syndromes, state of being possessed, hallucinatory, being restless and manic, and dogmatic with religious ideas." (*Id.* ¶ 54.)
- An article entitled "Beijing Falun Gong Fanatic Goes Mad Kills Father, Wife, and Injures Mother" described practitioners as having "twisted souls," subject to "mind control," and part of an "evil cult." (*Id.* ¶¶ 57, 60.)

- "Falun Gong Gathering Outside of Our Gate Making a Scene" (in reference to efforts by Falun Gong practitioners to explain the truth to the paper's publishers). (*Id.* ¶ 63.)

- "[T]he noise from the amplifiers not only disturbed the normal operation of China Press, at the same time they also disturbed the normal work of others working inside the Asian Cultural Building." (*Id.* ¶ 64.)

- "[T]he management personnel from the building said that the protestors tried to break into the building several times, wanting to deliver their *open letter* to China Press's person in charge." (*Id.*)

### B. *The 2002 Articles*

- "From the actions of Falun Gong, we see that this is strong evidence for Falun Gong instigating disorder. Falun Gong is not content by just causing disorder in China, came to New York, US, to cause disorder in the Chinese community." (*Id.* ¶¶ 69–70.)

- The Chinese Association Union believed that "the evil cult wanted to poison/confuse people's heart, which will bring bad influence in the Chinese American community." (*Id.* ¶ 71.)

- "There were many factors why the evil cult Falun Gong wreaking havoc hasn't stopped ... misleading the practitioners to the path of a stubborn superstition, self-important, demented unconscious, engenders a huge twisted effect to the personality of practitioners, and leads to self-destruction at the end." (*Id.* ¶ 72.)

- The three principles of Falun Gong should be changed to "hatred, shame, and outrage," Falun Gong is an "evil cult," and is similar to the KKK and the Branch Davidians. (*Id.* ¶¶ 74–76.)

### C. *Statements by Defendant STD*

Plaintiffs' amended complaint contains only one alleged statement made by defendant STD:

- An article entitled "Radical Religions Advocating the Destruction of the World" stated that local Falun Gong practitioners were "anti-science, anti-society, anti-civilization," "misleading," "misguided," "self-destructive," and "evil" and associated practitioners with terrorists by juxtaposing pictures of Falun Gong practitioners with pictures of WTC attacks (*Id.* ¶¶ 36–39.)

### DISCUSSION

Defendants argue that plaintiffs' amended complaint is defective as a matter of law, and therefore, should be dismissed because (i) plaintiffs' federal civil rights conspiracy claim fails to allege a conspiracy, a violation of a protected federal right, or any state action; (ii) plaintiffs' defamation and defamation per se claims rest on publications that are not "of and concerning" any of the plaintiffs and are devoid of statements of fact; and (iii) plaintiffs' prima facie tort claim seeks recovery for allegedly libelous activity, which is not within the ambit of prima facie tort. In addition, CP argues that plaintiff's state civil rights claim fails because the statute at issue does not reach newspaper publication, and that many of plaintiffs' defamation claims are time-barred.

### I. *12(b)(6) Standard*

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Press v. Chemical Inv. Servs. Corp.*,

166 F.3d 529, 534 (2d Cir.1999). Dismissal is proper "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Scotto v. Almenas,* 143 F.3d 105, 109–10 (2d Cir.1998) (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996)).

## II. *Civil Rights Conspiracy under 42 U.S.C. § 1985(3)*

Defendants argue that plaintiffs' civil rights conspiracy claim, brought pursuant to 42 U.S.C. § 1985(3), should be dismissed as a matter of law because plaintiffs (i) fail to plead a conspiracy or meeting of the minds; (ii) fail to show that any alleged interference with a federal right was the result of state action; and because (iii) a predicate violation of state law, namely New York State Civil Rights Law § 40–c, cannot provide the basis for a federal civil rights conspiracy.

■ To state a cause of action under the deprivation clause of § 1985(3), a plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999). Section 1985(3) provides no substantive rights itself; rather, it merely provides a remedy for violation of the rights it designates. *Great Am. Fed. Sav. & Loan Assoc. v. Novotny,* 422 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). As a result, to maintain a claim pursuant to § 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates. *See id.* at 376, 99 S.Ct. 2345; *see also Emanuel v. Barry,* 724 F.Supp. 1096, 1100 (E.D.N.Y.1989). In this case, plaintiffs allege that defendants engaged in a conspiracy to deprive them of their First Amendment rights to freedom of religion and association.[2]

### 1. *Conspiracy*

■ 42 U.S.C. § 1985 creates a federal cause of action against persons who conspire to interfere with the civil rights of another. *See* 42 U.S.C. § 1985. Conspiracy is an essential element of a claim under 42 U.S.C. § 1985. *Thomas,* 165 F.3d at 146. To properly allege a conspiracy claim, the complaint must contain specific factual allegations. "A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Vertical Broad., Inc. v. Town of Southampton,* 84 F.Supp.2d 379, 389–90 (E.D.N.Y.2000); *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (holding that conclusory, vague, or general allegations of a conspiracy cannot survive a motion to dismiss).

■ Here, the complaint does not include any facts that could support an inference of a conspiracy among the various defendants. Instead, plaintiffs rely on conclusory allegations of concerted action. Plaintiffs cite no facts from which a meeting of the minds could be inferred. Simply alleging that the defendants published defamatory articles at the same time is not enough to state concerted action. Plaintiff's § 1985(3) claim thus fails for failure to adequately plead a conspiracy.

---

**2.** Plaintiffs appear to have initially alleged in their amended complaint a § 1985(3) violation based on a conspiracy to deprive them of their civil rights pursuant to New York Civil Rights Law § 40–c. However, plaintiffs later argued that the claim under § 40–c is a separate claim, and alleged only a conspiracy to deprive them of their First Amendment rights. Thus, the Court will not address the § 40–c claim in the § 1985(3) context.

## 2. State Action

Plaintiffs' § 1985(3) claim fails, however, for a more fundamental reason. Here they rely on the deprivation clause of § 1985(3) to allege that defendants influenced the state to deprive them of their rights under the First Amendment. (*See* Am. Compl. ¶ 98.) Plaintiffs readily concede that they do not claim any state involvement in the alleged conspiracy. (*See* Tr. of Oral Arg., Feb. 11, 2003.) This concession is fatal to their claim.

■ In *United Brotherhood of Carpenters v. Scott,* the Supreme Court held that when an alleged § 1985(3) conspiracy is charged as violating First Amendment rights, no cause of action exists "unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." 463 U.S. 825, 830, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Plaintiffs in this case appear to be relying on the language in *Carpenters* suggesting that it is enough for a private conspiracy to "influence" state activity.

■■ Since the decision in *Carpenters,* however, the Supreme Court has made it plain that there is no viable claim under the deprivation clause of § 1985(3) for a private conspiracy aimed at rights that are protected only against state encroachment. In *Bray v. Alexandria Women's Health Clinic,* the Court held that the deprivation clause of § 1985(3) does not apply to private conspiracies aimed at a right protected *only* against state interference. 506 U.S. 263, 278, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). The right to free speech under the First Amendment is indisputably such a right. *See id.*

Plaintiffs reliance on *New York State NOW v. Terry,* 886 F.2d 1339, 1360 (2d Cir.1989) for the proposition that a § 1985(3) cause of action may lie even when a plaintiff is injured by a purely private conspiracy is misplaced. *New York State NOW* stands for the proposition that no state action is required in a § 1985(3) claim when the conspiracy is predicated on the violation of a constitutional right that is subject to both private and public encroachment, such as the right to interstate travel. As stated before, rights under the First Amendment are not rights that are subject to private encroachment, and *New York State NOW* is therefore not relevant.

■ In an effort to salvage their claim, plaintiffs allege for the first time in their brief that they are relying on that clause of § 1985(3) which provides a cause of action against those who conspire to "prevent[ ] or hinder[ ] the constituted authorities of any State or Territory from giving or securing to all persons . . . the equal protection of the laws . . . ." 42 U.S.C. § 1985(3). As an initial matter, this Court notes that plaintiffs may not raise a claim in a brief that is not set forth in the complaint to avoid dismissal. *See Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) ("A district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.").

Even if the plaintiffs moved to amend their complaint to allege a violation of the hindrance clause, this claim would fare no better. First, it is an unsettled question whether the hindrance clause of § 1985(3) can be applied to wholly private conspiracies aimed at rights protected only against official encroachment. The majority opinion in *Bray* left that question open, but suggested in dictum that a state action requirement would apply to the hindrance clause as well. *See Bray,* 506 U.S. at 282–83, 113 S.Ct. 753.

Since *Bray,* appellate courts appear divided on the issue. *See Tilton v. Richard-*

*son,* 6 F.3d 683, 687 (10th Cir.1993) (holding that claims under the hindrance clause must be based upon rights protected against both private and official interference); *but see Libertad v. Welch,* 53 F.3d 428, 449–50 (1st Cir.1995) (holding that claims brought under the hindrance clause do not require a state actor be involved in the conspiracy, even if the right interfered with is protected only against state encroachment).

The Second Circuit does not appear to have addressed this issue since *Bray.* In a pre-*Bray* case, the Circuit held that state action was not required to state a colorable claim under the hindrance clause. *See Abrams v. 11 Cornwell Co.,* 695 F.2d 34 (2d Cir.1982). It is unclear what position the Circuit would take after *Bray.*

In any event, the Court need not resolve that issue here. Even if one concludes that § 1985(3) prohibits wholly private conspiracies whose aim it is to hinder or prevent state authorities from securing constitutional rights of its citizens, the facts as alleged fail to make out such a claim. Plaintiffs point only to a series of newspaper articles that portray Falun Gong practitioners in an exceedingly bad light, and then reference the fact that there was a denial of a parade permit. There are no allegations that the articles advocated that plaintiffs be denied any First Amendment rights or that there was a correlation between the articles and the denial of the permit. Even if there were such a correlation, the fact that public officials might be "influenced" to act based upon press reports hardly rises to the level of hindering or preventing. To extend the limits of § 1985(3) to cover every case in which an argument could be made that press reports, even libelous press reports, have influenced the decision-making of state officials would be to turn § 1985(3) into the generalized federal tort law that it

was clearly not intended to be. *See Bray,* 506 U.S. at 269, 113 S.Ct. 753.

## II. *Subject Matter Jurisdiction*

 Plaintiffs' complaint alleges only one cause of action sufficient to invoke this Court's federal jurisdiction, namely the aforementioned § 1985(3) civil rights conspiracy. Because that claim has been dismissed, this Court must address whether it can or should exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) to decide plaintiffs' remaining state law claims. Federal courts with jurisdiction over claims that raise a federal question may also exercise supplemental jurisdiction over all other claims that are "so related" as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). State law claims form part of the same case or controversy when they "derive from a common nucleus of operative fact" and are such that one would ordinarily expect them to be tried together. *People by Abrams v. Terry,* 45 F.3d 17, 23, n. 7 (2d Cir.1995) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

 In deciding whether to exercise supplemental jurisdiction, the Court should consider whether such an exercise is justified by the interests of judicial economy, convenience, fairness to litigants, and comity. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Where all federal claims have been dismissed before trial, these factors "point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* However, circumstances may arise that warrant the retention of jurisdiction. Such circumstances include (i) if the outcome of the claim is plain or (ii) if the outcome of the state law claim turns on federal law. *See Waterman*

*v. Transport Workers' Union Local 100,* 8 F.Supp.2d 363, 369 n. 2 (S.D.N.Y.1998).

■ The Court chooses to exercise its supplemental jurisdiction in favor of deciding plaintiffs state law claims because the claims arise out of the same underlying facts, and the outcome of these claims is "plain." *See Id.,* 8 F.Supp.2d at 369 n. 2. ("One reason to retain jurisdiction is if the outcome of the claim is plain. In this situation, considerations of judicial economy [warrant] retention and decision rather than relinquishment of the case to the state court." (internal quotations omitted)).

III. *State Law Claims*

A. *Defamation*

■ Defendants argue that plaintiffs' defamation claim must be dismissed because plaintiffs fail to show that defendants' statements are "of and concerning" the plaintiffs and, thus, are barred by the "group libel doctrine," and because the defendants' statements are statements of opinion, not actionable statements of fact. Plaintiffs argue, however, that the group libel doctrine is not a *per se* bar to a successful defamation claim and, as a result, their defamation claim should survive a motion to dismiss. Because it is plain to the Court that the defendants' statements are barred by the group libel doctrine, plaintiffs' defamation claim is dismissed.

■ A claim for defamation is actionable under New York law if the defendant made (i) a false and (ii) defamatory (iii) statement of fact (iv) of and concerning the plaintiff (v) with the required degree of fault and (vi) special damages or per se liability. *See Celle v. Filipino Reporter Enters., Inc.,* 209 F.3d 163, 176 (2d Cir. 2000). However, under the "group libel doctrine," a plaintiff's defamation claim is

"insufficient if the allegedly defamatory statements referenced the plaintiff solely as a member of a group." *Abramson v. Pataki,* 278 F.3d 93, 102 (2d Cir.2002) (quoting *Church of Scientology Int'l v. Time Warner, Inc.,* 806 F.Supp. 1157, 1160 (S.D.N.Y.1992)); *see also Provisional Gov't of Republic of New Afrika v. Amer. Broad, Cos., Inc.,* 609 F.Supp. 104, 108 (D.D.C.1985) (noting that defamation is personal such that statements which refer to an individual do not implicate the organization of which plaintiff is a member while statements which refer to an organization do not implicate its members). In order to overcome the group libel doctrine, a plaintiff must demonstrate that "the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the member." *Church of Scientology,* 806 F.Supp. at 1160 (quoting Restatement (Second) of Torts, § 564A(b)).

In this case, plaintiffs cannot demonstrate that any of the defendants' allegedly defamatory statements reasonably give rise to the conclusion that they particularly reference any of the plaintiffs, either as members of the group or an identifiable sub-group. Not one of the statements contained in plaintiffs' amended complaint references either the "Friends of Falun Gong" or any of the 67 individually-named plaintiffs. Further, plaintiffs' position that they constitute a "discrete, readily identifiable sub-grouping of Falun Gong practitioners located within the New York metropolitan area" (*see* Am. Compl. ¶ 15) fails to save their claim, as defendants' allegedly defamatory statements at most reference "New York based Falun Gong practitioners," a group that far exceeds the particular plaintiffs.[3]

---

3. Defendants contend that there are millions of Falun Gong practitioners worldwide, and

over one thousand New York based practitioners. Plaintiffs do not offer alternative

Plaintiffs nevertheless contend that their defamation claim should not be dismissed because the allegedly defamatory statements need not reference plaintiffs by name. To support that position, they principally rely on *Church of Scientology Int'l v. Time Warner, Inc.* In *Church of Scientology,* the plaintiff, Church of Scientology International ("CSI") brought a defamation suit for the alleged damages it suffered from a *Time* magazine article entitled "Scientology: the Cult of Greed." 806 F.Supp. at 1158. In that case, the plaintiff's complaint set forth six purportedly defamatory statements, none of which explicitly referenced CSI. However, the article featured a photograph of CSI, with a caption stating "Church of Scientology International headquarters, Los Angeles." *Id.* at 1161. The court found that references in the *Time* article to the "Church of Scientology," "the church," and to "the Los Angeles-based church" could reasonably be understood to refer to the plaintiff, "given CSI's capacity as 'Mother Church,' the hierarchical structure of Scientology, and the caption of the photograph identifying CSI's headquarters as being located in Los Angeles...." *Id.*

By contrast, the court found that any reference to "Scientology" or to acts of individual Scientologists could not be ascribed to CSI and, thus, were not actionable under the group libel doctrine. The court found that "[w]ithout more, reference to the activities of individual Scientologists can not create a right of action in CSI." *See id.*

Plaintiffs' position here is akin to CSI's position with regard to the references to "Scientology." The court in *Church of Scientology* found that there were hundreds of other Scientology entities, and therefore a reference to "Scientology" in general could not be found to be "of and concerning" the plaintiffs. *See id.* Likewise, a reference to Falun Gong members cannot be said to reference either the individual plaintiffs or Friends of Falun Gong, given the number of Falun Gong practitioners and organizations.

Plaintiffs' position is clearly distinguishable from CSI's position with regard to references to the "church," or the "Los Angeles-based church." Insofar as plaintiffs are claiming that they are the "equivalent" of the Los Angeles Scientology chapter, as the readily identifiable and official non-profit Falun Gong organization registered with the State of New York, they do not allege sufficient facts to demonstrate that references to the group as a whole could be attributed to plaintiffs. Although there are a few references to activities that take place in New York, there are no references to an organization of New York-based Falun Gong practitioners, or to any organization of Falun Gong practitioners at all.

Plaintiffs also rely on *Sovik v. Healing Network,* 244 A.D.2d 985, 665 N.Y.S.2d 997 (N.Y.App.Div.1997), and this reliance is equally misplaced. The plaintiffs in *Sovik,* an individual Hindu priest suing on behalf of all those similarly situated, and the Himalayan Institute of Buffalo, brought a defamation suit against The Healing Network for publishing a letter attributing sexual coercion of women to the teachings of the Himalayan Institute. *See id.* Although the letter at issue did not reference

---

numbers in response. Instead, plaintiffs respond by arguing that the actual number of group members alone is insufficient to bar a defamation claim and, further, that the individual plaintiffs need not be named. Although, both of plaintiffs contentions are correct, they

set forth no viable legal argument to overcome the hurdle that their sheer numbers present, and no reason to believe that the particular plaintiffs in this case were identifiable within the group of New York based practitioners.

the individual named plaintiff, the court found that the statements sufficiently "of and concerning" the plaintiff to survive a motion to dismiss. *See id.* at 1000. The *Sovik* Court reached this conclusion because the individual plaintiff was one of only three Hindu priests in the United States, as well as the spiritual leader of the Himalayan Institute in Buffalo; he was one of 15 "senior teachers" in the United States; the allegedly defamatory statements were contained in a letter that was mailed to Institute members who would know the individual plaintiff as their spiritual leader, and the individual plaintiff was the only "senior teacher" located within a 300–mile radius of the Buffalo area. *See id.*

However, unlike the individual plaintiff in *Sovik,* who was an identifiable member of a small group of people, the individual plaintiffs here are 67 members of a significantly larger group. Further, plaintiffs are not "leaders" of the Falun Gong practice such that their identity is more readily discernible than the identify of a general group member. Accordingly, because plaintiffs cannot show that the circumstances of the defendants' allegedly defamatory publications reasonably give rise to an interpretation that they are "of and concerning" the plaintiffs, plaintiffs cannot

overcome the group libel doctrine and their defamation claim must be dismissed.[4]

## B. *Prima Facie Tort*

Defendants argue that plaintiffs' prima facie tort claim must be dismissed because plaintiffs have simply restated their nonactionable defamation claim as a claim for prima facie tort. Plaintiffs contend that their claim is not a repetition of their defamation claim, but that the defendants have committed a prima facie tort by intentionally inflicting harm without any excuse or justification.

To support a claim for prima facie tort, plaintiff must prove the following four elements: (i) intentional infliction of harm, (ii) causing special damages, (iii) without excuse or justification, (iv) by an act or series of acts that would otherwise be lawful. *See Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 882 (2d Cir. 1988); *Procter & Gamble Co. v. Quality King Distrib.,* 974 F.Supp. 190, 198 (E.D.N.Y.1997). "[I]t is well-settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort—even if the traditional tort claims turn out not to be viable." *Nevin v. Citibank,* 107 F.Supp.2d 333, 346–47 (S.D.N.Y.2000).

---

4. Plaintiffs allege both defamation and defamation per se. New York recognizes certain statements as defamatory per se, meaning they are actionable without proof of special damages. *See Celle v. Filipino Reporter Enters., Inc.,* 209 F.3d 163 (2d Cir.2000). The plaintiffs contend that defendants have committed defamation per se by alleging that plaintiffs committed criminal activity, which has typically been considered a category of speech that falls into defamation per se. *See Liberman v. Gelstein,* 80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344, 348 (1992). However, plaintiffs still must prove the other elements of defamation. The only requirement the plaintiffs need not fulfill in a defa-

mation per se claim is proof of special damages. *See Shor Int'l Corp. v. Eisinger Enters.,* No. 90 Civ. 2353, 1993 WL 452546, *5 n. 1, 2000 U.S. Dist. LEXIS 17478, at *12 n. 1. Because the plaintiffs have not even shown that the statements were "of and concerning" the defendants, as discussed above, the claim for defamation per se fail as well. Accordingly, plaintiffs' claim of defamation per se is dismissed.

Because plaintiffs' defamation claim is dismissed under the group libel doctrine, the Court need not reach defendants' additional argument that the claim should be dismissed because the allegedly defamatory statements are statements of opinion rather than fact.

This principle has been applied in the defamation context. In *Nat'l Nutritional Foods Ass'n v. Whelan*, 492 F.Supp. 374, 383 (S.D.N.Y.1980), the plaintiffs, a trade association of retailers, manufacturers, and distributors in the health food industry, alleged a prima facie tort against the defendants. Plaintiffs claimed that the defendants intentionally and maliciously inflicted harm by engaging in a conspiracy to publish articles containing false and defamatory remarks about the plaintiffs. The Court dismissed the prima facie tort claim, holding that the specific acts charged were "recognized as tortious in the law as defamation, and therefore, the remedies lie only in the classic categories of tort." *Id.* (internal quotation marks and citation omitted). The Court dismissed the claim even though it found that the same acts did not amount to libel or defamation, finding that "[i]t would make no sense... to deem certain expressions immune from suit as libel, and then find them sufficient in the identical factual context to constitute a prima facie tort...." *Id.* at 384.

Similarly, plaintiffs here cite no new facts in support of their prima facie tort claim. In fact, plaintiffs specifically claim that it is the publishing of the allegedly false and defamatory articles by the defendants that gives rise to their claim of prima facie tort. Because the only specific acts alleged by the plaintiffs are the exact same facts that failed as a defamation claim, plaintiffs' prima facie tort claim is dismissed.

## C. *New York Civil Rights Law § 40-c*

Plaintiffs allege a violation of New York Civil Rights Law § 40-c, claiming that de-

fendants discriminated against plaintiffs on the basis of religious belief. Section 40-c states:

No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability... be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

N.Y. Civ. Rights Law § 40-c (McKinney 2003).

Plaintiffs claim that the defendants' articles caused the discrimination and/or harassment of the plaintiffs in violation of the New York Civil Rights Law. Section 40-d of the Civil Rights Law establishes the penalties for "[a]ny person who shall violate any of the provisions of the foregoing section... or who shall aid or incite the violation of any of said provisions...." [5] N.Y. Civ. Rights Law § 40-d (McKinney 2003).

While the plaintiffs' claim is not entirely clear from their pleadings, they seem to allege that the defendants' articles caused Falun Gong members to be excluded from certain parades in New York, thereby "aiding or inciting" discrimination on the basis of religious belief. However, plaintiffs allege no facts that tie the activities of the defendants to the denial of permits for the parades. Within plaintiffs' amended complaint, there are two references to articles published by defendant CP regarding the denial of parade permits to Falun Gong members. Both articles, however, were reporting a denial that had already occurred, rather than encouraging

---

**5.** Plaintiffs cite § 41 of the Civil Rights Law as the section which creates the private right of action against any person who violates § 40-c. However, § 41 refers only to viola-

tions of §§ 40, 40-a, 40-b, or 42. N.Y. Civ. Rights Law § 41 (McKinney 2003). As plaintiffs cite only a violation of § 40-c, § 40-d is the applicable section here.

parade organizers to deny access to the Falun Gong.

Plaintiffs rely on *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York*, 968 F.2d 286 (2d Cir.1992) as support for their claim. In *Jews for Jesus*, a resort cancelled its contract with Jews for Jesus after the Jewish Community Relations Council threatened that the Jewish community would boycott the resort if Jews for Jesus was allowed to use its facilities. The Second Circuit remanded the case to the district court, finding that the individual plaintiff could maintain an action under the New York Civil Rights Law if the plaintiff could show that "defendants aided or incited the [resort] to deny him accommodations directly or indirectly, for statutorily impermissible reasons." *Id.* at 294. Plaintiff's reliance on *Jews for Jesus* is misplaced for several reasons.

■ First, *Jews for Jesus* made clear that an organization cannot sustain a suit under this section. *Id.* at 293–94. Section 40–c provides that "no *person* shall . . . be subjected to any discrimination in his or her civil rights . . . ." N.Y. Civ. Rights Law § 40–c (emphasis added). In *Jews for Jesus*, the court held that "person" means "individual." 968 F.2d at 293. Therefore, plaintiff Friends of Falun Gong, the entity, cannot maintain an action under § 40–c of the Civil Rights Law.

Although the individually-named plaintiffs have standing to maintain an action under this section, their claim also fails, as they have failed to allege that they personally were discriminated against by the defendants. None of the sixty-seven individual plaintiffs allege that they personally were denied permission to march in a public parade. Instead, the amended complaint refers only to *Falun Gong* being denied access.

More to the point, plaintiffs' allegations do not sustain a showing that defendants' articles aided or incited Falun Gong's exclusion from the parade. In *Jews for Jesus*, the resort cancelled its contract with the plaintiff as a direct result of the threatened economic sanctions. Here, the only articles written by the defendants that reference the parades were written *after* Falun Gong had been denied permission to march. Clearly, those articles were not the cause of Falun Gong's exclusion. In addition, as stated above, plaintiffs have not sufficiently alleged that any other articles, written before the parades took place, led to their exclusion.[6] Moreover, to find liability under this statute on the facts presented here would raise serious concerns as to the First Amendment rights of the defendants. *See Fed'n of Turkish–American Soc'ys, Inc. v. American Broad, Cos.*, 620 F.Supp. 56 (S.D.N.Y.1985).

Plaintiffs, therefore, have not shown that they specifically have been discriminated against, or that the defendants' articles were the reason for any discrimination.

---

**6.** Plaintiffs also cite no facts that would give rise to harassment within the meaning of § 40–c. Harassment in this section is defined by section 240.25 of the penal law, which states:

A person is guilty of harassment in the first degree when he or she intentionally and repeatedly harasses another person by following such person in or about a public place or places or by engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury . . . . N.Y. Penal Law § 240.25 (Consol.2003).

The plaintiffs allege that the defendants' articles have caused them to be inhibited from "freely practic[ing] their faith and associat[ing] without fear of verbal and physical reprisal." (Am.Compl.¶ 89.) However, they cite no facts alleging that anyone has physically threatened them at all, let alone threatened them as a result of the defendants' articles.

Therefore, plaintiffs' claim under New York Civil Rights Law § 40-c is denied.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close this case.

SO ORDERED.